OPINION
{¶ 1} David Walker was found guilty after a bench trial of one count of "failure to properly confine a vicious dog," a first degree misdemeanor, and two counts of "failure to confine," which are minor misdemeanors. The trial court imposed and suspended 180 days incarceration on the vicious dog count, and conditioned the suspension on compliance with certain conditions of probation. The trial court imposed fines of $100 and costs on each minor misdemeanor count.
 {¶ 2} Walker advances three assignments of error. The first assignment of error is as follows:
 {¶ 3} "1. The manifest weight of the evidence did not support a finding of guilt against appellant for improper confinement of a vicious dog."
 {¶ 4} The evidence germaine to this assignment is that on March 21, 2003, Greene County Animal Control Officer Danny Reynolds observed a pit bull dog in "the fenced-in area" at 919 Jasper Road in New Jasper Township, which is Walker's residence. According to Walker, the fence is chain link, six feet in height.
 {¶ 5} This assignment implicates the sufficiency of the evidence. The operative statutory language is R.C. 955.22(D)(1).
 {¶ 6} "(D) Except when a dangerous or vicious dog is lawfully engaged in hunting or training for the purpose of hunting and is accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of a dangerous or vicious dog shall fail to do either of the following:
 {¶ 7} "(1) While that dog is on the premises of the owner, keeper, or harborer, securely confine it at all times in alocked pen that has a top, locked fenced yard, or other lockedenclosure that has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained." (Emphasis ours).
 {¶ 8} Although Walker claims in his brief that Officer Reynolds testified that his fence was locked on March 21, we have found no affirmative evidence in the trial transcript of that effect. Nevertheless, the State has not challenged that assertion in its brief and reasons, as impliedly did the trial court from its questioning, that Walker was guilty because the fenced-in area did not have a top.
 {¶ 9} In our judgment, the trial court and the State have misread R.C. 955.22(D)(1). Although one might read the emphasized language to mean that a locked fence around a yard must have a top, one can also read this language to mean that only locked pens or other locked enclosures must have a top. We believe the latter interpretation to be the correct one and, to the extent that the language is ambiguous, that ambiguity must be resolved in Walker's favor. R.C. 2901.04(A). Furthermore, while it is no doubt possible to put a top on a pen or comparable enclosure, putting a top on a yard fence strikes us as impracticable and supports our interpretation of the operative language.
 {¶ 10} If the pit bull was confined by a locked yard fence, which appears to be the case, there was no violation of R.C.955.22(D)(1).
 {¶ 11} The first assignment is sustained and the conviction for failure to properly confine a vicious dog will be reversed and vacated.
 {¶ 12} "2. The manifest weight of the evidence did not support a finding of guilt against appellant for the remaining two counts of failing to confine a dog.
 {¶ 13} "3. The trial court erred to appellant's prejudice by not admitting into evidence exculpatory material intended to impeach and contradict the prosecution's only witness."
 {¶ 14} The evidence pertaining to this assignment is that on March 21, 2003, at 11:25 a.m., Officer Reynolds had been dispatched to 941 Jasper Road on a report of a Doberman Pincer and a German Shepherd running loose at that address. Officer Reynolds testified that he observed a German Shepherd and Doberman Pincer at 941 Jasper nipping at the hooves of a horse fenced-in at that address. The dogs disappeared to the back of the property only to reappear inside the fenced-in area at 919 Jasper, where Walker resides. In addition to these two dogs, Officer Reynolds observed another Doberman and the pit bull (which was the subject of the first assignment). Officer Reynolds testified that he attempted to make contact with an occupant of 919 Jasper without success, but did contact Walker four days later, at which time Walker acknowledged that the four dogs lived at 919 Jasper, and that he owned one of them and that a Brian Smith owned the other three. Walker wanted to show Officer Reynolds the fencing and protested that the dogs could not have gotten loose.
 {¶ 15} Terry Lytle, the wife of Walker's landlord, testified that on March 21, she brought lunch to Walker at 11:45 — 11:50 a.m. after first calling him at 11:30 a.m., and that she and Walker spent an hour and a half eating in her van in the driveway, and that she didn't see Officer Reynolds during that time. She said Walker and the dogs emerged from the house upon her arrival.
 {¶ 16} Walker makes a number of arguments in support of his claim that the findings of guilty are against the manifest weight of the evidence.
 {¶ 17} He first asserts the incredibility of Officer Reynolds' testimony that dogs he first observed at 941 Jasper reappeared "behind a completely secure fence at 919 Jasper." The problem with this argument is that Walker didn't testify and Terry Lytle didn't testify as to the condition of the fence on March 21. Although Walker claimed to have a tape with him apparently showing the integrity of the fence, the State objected, in part, because "there is no way to know if that is the way that the fence actually looked at 11:25 a.m. at the time that the dogs were at large." At this point, Walker abandoned any attempt to introduce the tape and it is not part of the record. It was not the State's burden to establish the integrity of the fence and it was well within the trial court's discretion to credit Officer Reynolds' testimony that the two dogs he observed at 919 Jasper were the same dogs he had first observed at 941.
 {¶ 18} Walker claims that after he showed Officer Reynolds the fence, Officer Reynolds said there was no way the dogs could have gotten out. This statement was attributed to Officer Reynolds by Walker during his cross-examination of Reynolds. Walker had not been sworn in as a witness and Officer Reynolds did not acknowledge having made such a statement. This alleged statement of Officer Reynolds was of no evidentiary value. Likewise, Walker's unsworn statement that he was home at 11:45 a.m. on March 21 is of no evidentiary value.
 {¶ 19} Walker contends that the trial court abused its discretion in not crediting the testimony of himself and Terry Lytle when it was not impeached or contradicted. We categorically reject the proposition that unimpeached or uncontradicted testimony must necessarily be credited. Having said that, we again point out that Walker was not a witness.
 {¶ 20} Turning to Terry Lytle, the trial court appears not to have disbelieved her. The trial court reasoned that it was possible for Officer Reynolds to have seen the dogs at 941 Jasper, seen them again at 919, tried to contact the occupant at 919, and departed the scene within the twenty to twenty-five minutes between his first seeing the dogs at 941 and Mrs. Lytle's arrival at 919. Given the apparent proximity of 941 and 919 Jasper, this reconciliation of the testimony does not appear to be unreasonable.
 {¶ 21} Walker claims to have been at home at the time of the alleged offense and didn't see Officer Reynolds. Again, his statement to that effect was unsworn and of no evidentiary value. More importantly, however, his statement was corroborated by Mrs. Lytle's testimony, which the court does not appear to have rejected. She testified that she called him at 11:30 and that he emerged from the house when she arrived at 11:45 — 11:50.
 {¶ 22} The fact that Mrs. Lytle said she didn't see an animal control officer is not, for the reasons stated above, inconsistent with Officer Reynolds' testimony.
 {¶ 23} Walker argues that the trial court abused its discretion in disallowing his surveillance tape upon the prosecutor's objection that Walker hadn't disclosed it in pretrial discovery.
 {¶ 24} Walker represented to the court that the tape depicted him and a friend (Mrs. Lytle) having lunch at the front gate and that Officer Reynolds is not in the tape. The apparent purpose of the tape was to impeach Reynolds' testimony that after observing the dogs at 919 Jasper he tried (without success) to contact the occupant.
 {¶ 25} We needn't determine whether the trial court abused its discretion. Mrs. Lytle's testimony supported what Walker claimed the tape would show and the trial court does not appear to have disbelieved her.
 {¶ 26} Any failure on the part of the trial court in ruling on this tape — which is not part of the record — was at most harmless.
 {¶ 27} The second and third assignments are overruled.
 {¶ 28} The two failure to confine convictions will be affirmed.
Fain, P.J. and Young, J., concur.