The STATE of Ohio, Appellee,

v.

MURPHY, Appellant.

[Cite as *State v. Murphy,* 168 Ohio App.3d 530, 2006-Ohio-4549.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–06–24.

Decided Sept. 5, 2006.

---

Jon S. Doyle, for appellant.

Mark Russell, Marion City Law Director, and Jason Warner, Assistant City Prosecutor, for appellee.

---

SHAW, Judge.

{¶ 1} Defendant-appellant, Heidi Murphy, appeals from the May 8, 2006 judgment of the Marion Municipal Court, Marion County, Ohio, finding her guilty of one count of failure to confine a vicious dog and two counts of failure to obtain liability insurance, all in violation of R.C. 955.22.

{¶ 2} These charges stem from events occurring on October 28, 2005, in Marion, Ohio. On this date, Jeremy Roberts, a Deputy Dog Warden for Marion

County, responded to a call concerning a pit bull that was seen running loose in the general area of Murphy's home. Roberts saw a man, later identified as Murphy's husband, letting an unrestrained pit bull into the home. Roberts spoke with Murphy's husband and was informed that Murphy was the registered owner of two pit bull dogs. Roberts inquired as to whether Murphy had any liability insurance for the pit bulls, and Murphy's husband responded that she did not.

{¶ 3} Roberts then advised Murphy's husband that Murphy would be required to visit the dog warden's office to pick up a vicious-dog-notice packet within 72 hours. After Murphy failed to visit the dog warden's office to receive the packet or to show proof of insurance within the 72 hours, Roberts issued three citations against Murphy pursuant to R.C. 955.22: one count of failure to confine a vicious dog and two counts of failure to obtain liability insurance.

{¶ 4} The matter proceeded to a bench trial on May 4, 2006. At the close of the evidence, the court found Murphy guilty of one count of failure to confine a vicious dog and both counts of failure to obtain liability insurance.

{¶ 5} The court suspended the jail sentences and fines on the condition that Murphy comply with the requirements of R.C. 955.22 within 30 days. Specifically, the court required Murphy to "obey the laws of the State of Ohio and its subdivisions for a period of two years and that she comply with all requirements of Ohio Revised Code Section 955.22 with regard to the proper confinement and insurance of the dogs subject to this case and any vicious dogs which she owns, keeps, or harbors."

{¶ 6} Murphy now appeals, asserting one assignment of error.

### ASSIGNMENT OF ERROR

The court erred in finding the appellant kept, owned and/or harbored vicious dogs simply because her dogs belonged to the breed commonly known as pit bulls and there was no evidence to support the finding that the dogs were vicious.

{¶ 7} In her sole assignment of error, Murphy contends that the trial court erred in finding that the dogs were vicious, based solely on a statutory presumption, from the fact they were pit bulls, and that the verdict as to these dogs was against the weight of the evidence.

{¶ 8} In reviewing whether the trial court judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the

factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Andrews*, 3d Dist. No. 1–05–70, 2006-Ohio-3764, 2006 WL 2044942, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717; *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 9} In making this determination, the Ohio Supreme Court has outlined eight factors for consideration, including "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23–24, 514 N.E.2d 394, citing *State v. Mattison* (1985), 23 Ohio App.3d 10, 23 OBR 43, 490 N.E.2d 926, syllabus. Ultimately, however, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin*, 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 10} This court notes that Murphy has not challenged the constitutionality of the statutes under which she was charged and convicted, either at trial or on appeal. See, e.g., *Toledo v. Tellings*, 5th Dist. No. L–04–1224, 2006-Ohio-975, 2006 WL 513946; *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846. Furthermore, Murphy has not alleged that the trial court erred in finding that she did not keep her dogs properly confined or that she did not have the required liability insurance covering her dogs. Therefore, the sole issue for review by this court is whether Murphy's dogs were "vicious dogs" as defined by R.C. 955.11. Accordingly, this court shall focus its discussion solely on Murphy's assertion that the trial court judgment finding her dogs to be vicious was against the weight of the evidence.

{¶ 11} R.C. 955.22(A) states:

As used in this section, "dangerous dog" and "vicious dog" have the same meaning as in section 955.11 of the Revised Code.

{¶ 12} R.C. 955.22(D) states:

[N]o owner, keeper, or harborer of a dangerous or vicious dog shall fail to do either of the following: (1) While that dog is on the premises of the owner, keeper, or harborer, securely confine it at all times in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained; (2) While that dog is off the premises of the owner, keeper, or harborer, keep that dog on a chain-link leash or tether * * *.

{¶ 13} A "vicious dog" is one that satisfies the requirements of R.C. 955.11(A)(4)(a) which provides:

"Vicious dog" means a dog that, without provocation and subject to division (A)(4)(b) of this section, meets any of the following: (i) Has killed or caused serious injury to any person; (ii) Has caused injury, other than killing or serious injury, to any person, or has killed another dog. (iii) Belongs to a breed that is commonly known as a pit bull dog. *The ownership, keeping, or harboring of such a breed of dog shall be prima-facie evidence of the ownership, keeping, or harboring of a vicious dog.*

(Emphasis added).

{¶ 14} Thus, subsections (A)(4)(a)(i) and (ii) define a vicious dog strictly in terms of specific instances of conduct. However, pursuant to subsection (A)(4)(a)(iii), prima facie evidence of a vicious dog may be established simply by showing that the dog belongs to the breed commonly known as a pit bull dog, even if such dog has not, without provocation, killed or caused injury to any person or killed another dog. In sum, unlike the specific and conclusive instances of conduct set forth in subsections (A)(4)(a)(i) and (ii), proof of the pit bull breed under subsection (A)(4)(a)(iii) establishes only a *presumption* that the dog is vicious.

{¶ 15} Thus, R.C. 955.11(A)(4)(a)(iii) clearly contemplates the possibility that a defendant may rebut this presumption with the proper evidence. *State v. Browning,* 5th Dist. Nos. 2002CA42, 2002CA43, 2002CA44, 2002CA45, 2002-Ohio-6978, 2002 WL 31820334, citing *State v. Ferguson* (1991), 76 Ohio App.3d 747, 751, 603 N.E.2d 345. However, mere evidence of the absence of the specific conduct contained in R.C. 955.11(A)(4)(a)(i) and (ii), standing alone, is insufficient as a matter of law to rebut the state's prima facie showing that a defendant's dog is a "vicious dog" as defined by R.C. 955.11(A)(4)(a)(iii). *Ferguson,* 76 Ohio App.3d at 751, 603 N.E.2d 345.

{¶ 16} In the present case, subsections (i) and (ii) of R.C. 955.11(A)(4) are not specifically at issue. There was no evidence presented to the trial court that either of Murphy's pit bulls ever engaged in conduct whereby they killed or caused serious injury to any person, caused injury other than killing or serious injury to any person, or killed another dog. Although the mere absence of these elements, standing alone, is insufficient to rebut the state's prima facie showing that Murphy's dogs were "vicious dogs," we must determine whether Murphy presented additional, sufficient evidence to rebut the state's prima facie showing that her dogs were vicious dogs simply because the dogs belong to the breed commonly known as a pit bull dog.

{¶ 17} In the present case, the parties stipulated that the dogs in question were pit bulls and that Murphy was in fact the owner, keeper, or harborer of the dogs. The state presented the testimony of the dog warden, Jeremy Roberts, who

testified as to the events occurring on October 28, 2005, and Murphy's subsequent failure to pick up the vicious-dog-notice packet, as Roberts had requested. However, on cross-examination, Roberts admitted that the younger of Murphy's two dogs displayed no act of aggression toward him and that the dog did not charge, bite, or bare its teeth or otherwise look like it was going to bite him. Furthermore, Roberts admitted that he was not aware of any instances of either of these dogs having killed another dog or bitten a person.

{¶ 18} Murphy presented the testimony of a neighbor, Frederick Holt, who testified that he was familiar with Murphy's two pit bulls. Specifically, Holt testified that he has no hesitation in allowing his children to play with the subject dogs, that he never "noticed the dogs to be aggressive with the children," and that the dogs are not vicious at all and are "like kids running around the floor."

{¶ 19} Murphy also testified and stated that she allows her dogs to sleep with her children, that she has never known the dogs to become aggressive or bite any animal or person, that no one has ever complained to her about their being mean, and that, in her opinion, they are not vicious and they have never been vicious.

{¶ 20} Murphy also offered video evidence, presenting a video taken of the dogs showing how they act in her home around her children. The state stipulated that "the dogs appear to be playing in the video," and "don't appear to be aggressive with the children."

{¶ 21} Although the state argues that this evidence offered by the defense is simply the "self-serving testimony of the Appellant herself and that of a long-time family friend," a review of the record indicates that the trial court was seemingly not concerned with the potentially self-serving nature of this testimony and did not question the reliability or credibility of the testimony. On the contrary, the court noted, "The Defendant's offered evidence regarding her particular dogs, and the temperament of her particular dogs to rebut this statutory label. The Court understands this particular evidence that's been presented."

{¶ 22} Furthermore, as an explanation for her finding, the judge stated,

I guess it comes down to is [sic] the rebutting of this pit bull label in the statute. The Defendant's offered evidence regarding her particular dogs, and the temperament of her particular dogs to rebut this statutory label. The Court understands this particular evidence that's been presented. *The problem is is [sic] that you're looking at years of history and temperament of pit bulls in general, and the Court's gonna [sic] find that the Defendant is guilty of Failure to Confine a Vicious Dog and Failure to Obtain Liability Insurance.*

(Emphasis added).

{¶ 23} Thus, notwithstanding the evidence presented by Murphy to show that her specific dogs were not vicious and the state's failure to present evidence to

support its prima facie case that the dogs were, in fact, vicious, it appears that the trial court found Murphy guilty of the aforementioned charges based solely upon the "history and temperament of pit bulls in general." In addition to the trial court's problematic failure to acknowledge the specific evidence in the record in rendering the verdict, we find that the trial court's reliance on the history and temperament of pit bulls in general may itself be misplaced, in light of the more recent empirical data noticed in the decision of *Toledo v. Tellings*, 2006-Ohio-975.

{¶ 24} In *Tellings*, the court noted that previous cases involving "vicious dog" laws, especially from the late 1980s and early 1990s, relied on what is now outdated information that perpetuated a stereotypical image of pit bulls. Id. at ¶ 63. The court concluded that both R.C. 955.11(A)(4)(a)(iii) and 955.22, which relied on the now disproved presumption that pit bulls, as a breed, are inherently dangerous, are now unconstitutional because they lack a rational or real and substantial relationship to a legitimate government interest. Id. at ¶ 69.

{¶ 25} Accordingly, in this case, we hold that the evidence provided at trial does not support a verdict that Murphy's dogs were vicious simply because they are of a breed commonly known as a pit bull dog. The trial court therefore erred in rendering a verdict that Murphy's dogs were vicious based on the history of this breed and based solely on the fact that the dogs were pit bulls. In reaching this conclusion, we are especially mindful that the trial court did not appear to challenge the credibility or otherwise reject the uncontroverted testimony as to the nonviolent nature and conduct of these particular dogs.

{¶ 26} Based on the foregoing, we must find that the trial court's verdict was against the weight of the evidence. Accordingly, Murphy's sole assignment of error is sustained, and the judgment and sentence of the Marion Municipal Court are reversed and remanded for further proceedings consistent with this opinion.

Judgment reversed.

BRYANT, P.J., and ROGERS, J., concur.