OPINION *Page 2 
{¶ 1} Defendant-Appellant Naomi Smith ("Smith") appeals from the May 22, 2007 Judgment Entries of the Lima Municipal Court, Allen County, Ohio finding her guilty of one count of failure to obtain liability insurance for a vicious dog violation of Ohio Revised Code 955.22(E) and one count of failure to properly confine a vicious dog in violation of Ohio Revised Code 955.22(D)(1).
 {¶ 2} This matter originated in December, 2006 when Allen County Dog Wardens observed Smith's black and white dog in the fenced-in backyard of her residence on Spring Street in Lima, Ohio. The wardens advised Smith that her dog needed to have dog tags, as well as the proper liability insurance for such a dog, as the wardens believed that Smith owned a pit bull mix dog. However, no citations were issued to Smith at this time.
 {¶ 3} The dog wardens stopped at Smith's residence a second time after again observing Smith's dog in the backyard. The wardens asked Smith for proof of insurance for the dog which they believed to be a pit bull mix. However, Smith could not provide any paperwork showing that her dog was covered by an insurance policy. No citations were issued to Smith at this time.
 {¶ 4} On January 30, 2007 the dog wardens were driving past Smith's house when they noticed her dog in the front yard where it was not on a leash, nor was it wearing a muzzle or confined in a kennel with a secured roof with a *Page 3 
padlock. The dog wardens again asked Smith for proof that her dog was covered under a proper insurance policy. Although Smith provided a copy of her insurance policy which she believed covered her dog, the wardens advised Smith that the terms of said policy did not specifically cover pit bulls or pit bull mix dogs. Thus, the wardens determined that Smith was unable to show proof that her dog was covered by an insurance policy and issued two citations to Smith. The first citation was issued for Smith's failure to obtain liability insurance for a vicious dog in violation of R.C. 955.22(E). The second citation was issued for Smith's improper confinement of that same vicious dog in violation of R.C.955.22(D)(1). Both of these citations were first degree misdemeanor offenses.
 {¶ 5} At her arraignment on February 2, 2007 Smith entered a plea of not guilty to both charges. This matter proceeded to a trial to the court on May 22, 2007.
 {¶ 6} At trial, the State presented the testimony of Allen County Dog Warden Kirk Wilmoth ("Wilmoth") who testified that he has been employed as dog warden since September, 2006. Wilmoth testified that he first had contact with Smith as he checked on a trap at the residence next door to Smith's. Wilmoth testified that at that time, he was "looking for a male white and black pit bull that looks exactly like her female black and white pit bull mix that was in her fenced-in backyard." Wilmoth testified that based on his experience and training, he *Page 4 
determined that Smith's dog was pit bull or a pit bull mix. Wilmoth testified that he advised Smith that she needed a dog tag and insurance for her dog after she told him she did not have insurance and did not know what the laws were. Wilmoth testified that he explained the laws regarding proper confinement of pit bull and pit bull mix dogs, and provided Smith with a copy of the laws.
 {¶ 7} Wilmoth also testified regarding his second encounter with Smith after he again observed Smith's dog in her backyard. Wilmoth testified that he asked Smith for proof of insurance.[1] Wilmoth testified that Smith presented an insurance policy but was unable to identify the section of the policy that covered animals, and that she did not present any other paperwork showing that her dog was covered by an insurance policy.
 {¶ 8} Wilmoth testified that his third encounter with Smith occurred on January 30, 2007 when he and his partner were driving on Spring Street and observed Smith's dog running free in her front yard. Wilmoth testified that at this time the dog was not on a leash, was not properly confined in a kennel with a secured roof with a padlock, was not wearing a muzzle, and that there were no adults outside with the dog in the yard. Wilmoth testified that Smith showed him an insurance policy and stated that she believed she had the proper insurance on her dog. However, Wilmoth testified that he did not see anything in the policy to *Page 5 
indicate that Smith had the necessary insurance to cover her dog. Wilmoth also testified that because the January 30, 2007 incident was the third time he and his partner had seen Smith's dog and spoke with Smith, they would issue citations to her for failure to properly confine the dog and failure to have insurance.
 {¶ 9} The State also presented the testimony of Allen County Dog Warden Matthew Durkee ("Durkee") who testified that he has been employed as a dog warden for approximately five months. Durkee testified that their office has a chart that references the five breeds of pit bulls. Durkee also testified that the characteristics of a pit bull are a boxy head, broadness of shoulders, and muscular jaws, and testified that Smith's dog displayed all three of these characteristics. Durkee testified that he classified Smith's dog as pit bull or a pit bull mix breed dog. When asked on cross-examination whether the characteristics he described as being common to pit bulls were also similar to the characteristics of a boxer, Durkee testified "no, boxers have pretty characteristic faces, nose being almost smashed in look" and testified that Smith's dog had a pit bull or pit bull mix face.
 {¶ 10} Specifically regarding the January 30, 2007 incident, Durkee testified that he and Wilmoth observed Smith's dog in her front yard unleashed, unsupervised, and not wearing a muzzle. Durkee also testified that he and Wilmoth spoke with Smith and asked her about the liability insurance for her dog. Durkee testified that Smith showed them a policy "but was unable to provide a *Page 6 
location in the policy where it specifically referenced pit bulls of all breeds of dogs."
 {¶ 11} At the close of the State's case, Smith testified in her own defense. Smith testified that the dog wardens told her she needed to have special insurance but that she disagreed with them because her dog was not a pit bull. Smith testified that she believed her dog to be a boxer mix. Smith testified that she got the dog in North Carolina and that there was no indication that her dog was a pit bull or pit bull mix as the father of her dog was a pure boxer and the mother of her dog was "just a black dog."
 {¶ 12} Smith testified that she obtained an insurance policy on January 12, 2007 that was specifically for the dog and her home, and that at that time she believed she had liability insurance on her dog. Smith also testified that although she believed her dog to be a boxer mix and not a pit bull mix, she got the insurance for her dog because the dog wardens told her that she had to. Smith also testified that although her insurance policy does not contain the words "dog" or "bite" she understood and believed that insurance coverage was provided for the dog under the personal property protection or reimbursement provision.
 {¶ 13} Smith also presented the testimony of Angela Crow ("Crow"), Smith's sister, who testified that she was with Smith when Smith got her dog in North Carolina. Crow testified that the father of Smith's dog was a big brown *Page 7 
boxer and that the mother was a small, slim black dog that looked like a mutt. Crow testified that there were no indications by the owner of the father dog that it was a pit bull or pit bull mix and the owner had the dogs advertised as boxer puppies.
 {¶ 14} At the close of all the evidence, the court found Smith guilty of R.C. 955.22(E) and R.C. 955.22(D)(1). On this same date, the trial court entered Journal Entries finding Smith guilty of both counts and sentencing her, on each count, to a fine of $150.00 plus court costs and a sentence of 180 days in the Allen County Justice Center. However, the court suspended the jail sentence on the condition that Smith successfully complete two years probation and that she "keep [her] dogs confined according to the law and maintain liability insurance." (See May 22, 2007 Journal Entries and June 12, 2007 Journal Entry of Finding by the Court and Criminal Sentencing).
 {¶ 15} On June 4, 2007 Smith filed a motion for a new trial with the Lima Municipal Court. On this same date, Smith filed a notice of appeal with this court. However, on June 12, 2007 this court entered a Journal Entry dismissing Smith's appeal as untimely as it was prematurely filed pursuant to App.R. 4(B)(3). On June 21, 2007 the State filed a motion for continuance with the trial court, requesting additional time to file a motion in opposition to Smith's motion for a new trial. This request was granted, and on July 5, 2007 the State filed a motion in *Page 8 
opposition to Smith's motion for a new trial. On August 27, 2007 the trial court issued a Journal Entry overruling Smith's motion for a new trial.
 {¶ 16} Smith now appeals, asserting eight assignments of error.
 ASSIGNMENT OF ERROR NO. 1 R.C. 955.22 VIOLATES THE CONSTITUTIONAL RIGHT TO PROCEDURAL DUE PROCESS INSOFAR AS IT FAILS TO PROVIDE DOG OWNERS A MEANINGFUL OPPORTUNITY TO BE HEARD ON THE ISSUE OF WHETHER A DOG IS, INDEED, A PIT-BULL, THUS ESTABLISHING PRIMA FACIE EVIDENCE THAT IT IS VICIOUS AS DEFINED IN R.C. 955.11(4)(a)(iii), BEFORE THERE IS A TRIAL AS TO WHETHER OR NOT THE DEFENDANT VIOLATED OHIO STATUTES IN REGARD TO OWNING OR HARBORING VICIOUS OR DANGEROUS DOGS PURSUANT TO THE HOLDING IN STATE v. COWAN. THAT IS, JUST AS R.C. 955.22 IS UNCONSTITUTIONAL INSOFAR AS THERE IS NO PROCEDURAL DUE PROCESS TO FIRST DETERMINE WHETHER A DOG WHICH HAS BITTEN SOMEONE IS VICIOUS UNDER R.C. 955.11(a)(i) AND (ii) BEFORE THE OWNER IS SUBJECTED TO R.C. 955.22, UNDER THE THEORY OF STARE DECISIS, THE SAME HOLDING IS TRUE IF THERE IS DISAGREEMENT ABOUT THE HERITAGE OF THE DOG, BEFORE A PERSON IS CHARGED WITH VIOLATING R.C. 955.22 FOR NOT FOLLOWING THE STATUTE IN REGARD TO OWNING OR HARBORING A VICIOUS DOG.
 ASSIGNMENT OF ERROR NO. 2 APPELLANT WAS DEPRIVED OF A FAIR TRIAL AND DUE PROCESS AS GUARANTEED BY THE OHIO AND U.S. CONSTITUTIONS, WHEN THE MUNICIPAL COURT DISREGARDED THE FACT THAT R.C. 955.11(4)(a)(iii) STATES THAT BEING A PIT-BULL DOG IS PRIMA FACIE EVIDENCE THAT THE DOG IS, INDEED, VICIOUS. "PRIMA FACIE" EVIDENCE MEANS THAT THE EVIDENCE IS SUBJECT TO REBUTTAL. *Page 9 
 ASSIGNMENT OF ERROR NO. 3 APPELLANT WAS DEPRIVED OF A FAIR TRIAL AND DUE PROCESS AS GUARANTEED BY THE OHIO AND U.S. CONSTITUTIONS WHEN THE MUNICIPAL COURT EMPLOYED THE FALLING DOMINO EFFECT WHICH CAN ONLY RESULT IN ONE CONCLUSION; THAT THE DEFENDANT IS GUILTY, ONCE THE PERSON WHO ISSUED THE CITATIONS TESTIFIED THAT THE DOG IN QUESTION IS A PIT-BULL.
 ASSIGNMENT OF ERROR NO. 4 [THE] MUNICIPAL COURT ERRED WHEN IT RELIED ON AN ATTORNEY GENERAL'S OPINION THAT ALL OFFICERS SHOULD KNOW A PIT-BULL WHEN THEY SEE ONE, AS A MATTER OF LAW, AND THUS DEFINITIVE PROOF THAT THE DOG IN QUESTION IS A PIT-BULL — RATHER THAN AS A MATTER OF EXPECTATION, SUBJECT TO FURTHER DETERMINATION.
 ASSIGNMENT OF ERROR NO. 5 COURTS HAVE ERRED WHEN FINDING THAT A MIXED BREED DOG, WHICH THE DOG WARDEN SUBJECTIVELY CLAIMS LOOKS LIKE IT HAS SOME BULLDOG HERITAGE IS SUBJECT TO R.C. 955.11(4)(a)(iii), WHICH ONLY REFERS TO THE BREED COMMONLY KNOWN AS A PIT-BULL, AND DOES NOT SPECIFICALLY STATE THAT MIX-BREED DOGS MAY BE THROWN INTO THE NET, VIOLATING OHIO CONSTITUTION, ARTICLE ONE, SECTION 1.
 ASSIGNMENT OF ERROR NO. 6 [THE] MUNICIPAL COURT ABUSED ITS DISCRETION IN ITS JUDGMENT ENTRY DENYING APPELLANT A NEW TRIAL RELYING ON A PARTICULAR CONSTITUTIONAL ISSUE IN TOLEDO v. TELLINGS, 114 OHIO St.3d 278, 2007-OHIO-3724, WHICH IS NOT AT ISSUE IN THIS CASE.
 ASSIGNMENT OF ERROR NO. 7 ASSUMING DEFENDANT/APPELLANT IS GUILTY OF NOT PROPERLY CONTAINING HER DOG, [THE] MUNICIPAL *Page 10 
 COURT ERRED WHEN IT REQUIRED, AS PART OF HER PROBATION, THAT SHE ONLY PUT THE DOG OUTSIDE IN A FENCED IN YARD, IF THAT YARD HAS A COVER, WHICH CONTRAVENES THE HOLDING IN STATE v. WALKER, GREEN APP. NO. 2003-CA-94, 2004-OHIO-7259.
 ASSIGNMENT OF ERROR NO. 8 DEFENDANT/APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HER RIGHTS PURSUANT TO THE SIXTH AMENDMENT (BILL OF RIGHTS) TO THE UNITED STATES CONSTITUTION; ARTICLE ONE SECTIONS 1 AND 10 OF THE OHIO CONSTITUTION.
 {¶ 17} As a preliminary matter, we note that although Smith has alleged eight assignments of error, several of these assignments of error address the same issue. Therefore, for ease of discussion, we will address some of Smith's assignments of error together and will address some of Smith's assignments of error out of order.
 Assignments of Error Nos. 1, 2, 3, 5, and 6 {¶ 18} Taken together, Smith's first, second, third, fifth, and sixth assignments of error allege violations of Smith's constitutional right to due process, her ability to rebut prima facie evidence at trial, and whether the trial court's judgment was against the manifest weight of the evidence.
 {¶ 19} In reviewing whether the trial court judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. State v. Thompkins (1997),78 Ohio St.3d 380, 387, *Page 11 678 N.E.2d 541. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the fact-finder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Andrews, 3rd Dist. No. 1-05-70, 2006-Ohio-3764 citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717; Thompkins, 78 Ohio St.3d at 387,678 N.E.2d 541.
 {¶ 20} In making this determination, the Supreme Court of Ohio has outlined eight factors for consideration, including "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness's testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary."State v. Apanovitch (1987), 33 Ohio St.3d 19, 23-24, 514 N.E.2d 394
citing State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus. Ultimately, however, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin,20 Ohio App.3d at 175, 485 N.E.2d 717.
 {¶ 21} In the present case, Smith alleges that R.C. 955.22 and R.C.955.11 violate her constitutional right to procedural due process because these statutes fail *Page 12 
to provide dog owners with a meaningful opportunity to be heard on the issue of whether their dog is a pit-bull. However, we note that the Supreme Court of Ohio has recently held that R.C. 955.11(A)(4)(a)(iii) and R.C. 955.22 are constitutional and do not violate procedural due process rights. See Toledo v. Tellings, 114 Ohio St.3d 278,871 N.E.2d 1152, 2007-Ohio-3724.
 {¶ 22} In Tellings, the Supreme Court of Ohio noted that "the state and the city have a legitimate interest in protecting citizens against unsafe conditions caused by pit bulls." 2007-Ohio-3724 at ¶ 25. The Supreme Court of Ohio also found that "the statutes and the city ordinance are rationally related to serve the legitimate interests of protecting Ohio and Toledo citizens. Id. at ¶ 28. Additionally, the court held as follows:
 Unlike the situation in Cowan [State v. Cowan (2004), 103 Ohio St.3d 144, 814 N.E.2d 846], the General Assembly has classified pit bulls generally as vicious; there is no concern about unilateral decision-making on a case-by-case basis. The clear statutory language alerts all owners of pit bulls that failure to abide by the laws related to vicious dogs and pit bulls is a crime. Therefore, the laws do no violate the rights of pit bull owners to procedural due process.
Id. at ¶ 32.
 {¶ 23} R.C. 955.22 governs the confinement of dogs, including dangerous or vicious dogs, and provides, in relevant part, as follows:
 (A) As used in this section, "dangerous dog" and "vicious dog" have the same meanings as in section 955.11 of the Revised Code. *Page 13 
 * * *
 (D) Except when a dangerous or vicious dog is lawfully engaged in hunting or training for the purpose of hunting and is accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of a dangerous or vicious dog shall fail to do either of the following: (1) While that dog is on the premises of the owner, keeper, or harborer, securely confine it at all times in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained;
 * * *
 (E) No owner, keeper, or harborer of a vicious dog shall fail to obtain liability insurance with an insurer authorized to write liability insurance in this state providing coverage in each occurrence, subject to a limit, exclusive of interest and costs, of not less than one hundred thousand dollars because of damage or bodily injury to or death of a person caused by the vicious dog.
 {¶ 24} A "vicious dog" is one that satisfies the requirements of R.C.955.11(A)(4)(a) which provides, in relevant part, as follows:
 "Vicious dog" means a dog that, without provocation and subject to division (A)(4)(b) of this section, meets any of the following:
 (i) Has killed or caused serious injury to any person;
 (ii) Has caused injury, other than killing or serious injury, to any person, or has killed another dog.
 (iii) Belongs to a breed that is commonly known as a pit bull dog. The ownership, keeping, or harboring of such a breed of dog shall be prima-facie evidence of the ownership, keeping, or harboring of a vicious dog. (Emphasis added).
 {¶ 25} Thus, subsections (A)(4)(a)(i) and (ii) define a vicious dog strictly in terms of specific instances of conduct. Pursuant to subsection (A)(4)(a)(iii), prima facie evidence of a vicious dog may be established simply by showing that the dog *Page 14 
belongs to the breed commonly known as a pit bull dog, even if such dog has not, without provocation, killed or caused injury to any person or killed another dog. State v. Murphy (2006), 168 Ohio App.3d 530, 534,860 N.E.2d 1068. In sum, unlike the specific and conclusive instances of conduct set forth in subsections (A)(4)(a)(i) and (ii), proof of the pit bull breed under subsection (A)(4)(a)(iii) establishes only apresumption that the dog is vicious. Id. (Emphasis in original). However, while subsections (i) and (ii) require actual causation of injury or death by the dog, under subsection (iii), the pit bull breed is statutorily presumed to be more likely to cause the unprovoked injury or death specified in subsections (i) and (ii) than other breeds. SeeToledo v. Tellings, supra (upholding the legislative classification of pit bulls on that basis). As a result, in the case of a pit bull, thepresumed likelihood of injury or death is alone deemed sufficient to constitute a prima facie violation of R.C. 955.11.
 {¶ 26} Nevertheless, the language of R.C. 955.11(A)(4)(a)(iii) clearly contemplates that a defendant may rebut this presumption with the proper evidence. State v. Browning, 5th Dist. Nos. 2002CA42, 2002CA43, 2002CA44, 2002CA45, 2002-Ohio-6978 citing State v.Ferguson (1991), 76 Ohio App.3d 747, 751, 603 N.E.2d 345. Such rebuttal evidence could, of course, include proof that the dog is not a pit bull or does not belong to a breed commonly known as a pit bull dog. And it could also include evidence that whatever the breed, the *Page 15 
particular dog in question has a history of demonstrated conduct, temperament and disposition such that no trier of fact could reasonably infer that the dog would be likely to act without provocation to cause the injuries or death described in subsections (i) and (ii). See, for example, Murphy, supra. However, mere evidence of the absence of the specific conduct contained in R.C. 955.11(A)(4)(a)(i) and (ii), standing alone, is insufficient as a matter of law to rebut the State's prima facie showing that a defendant's dog is a "vicious dog" as defined by R.C. 955.11(A)(4)(a)(iii). Murphy, supra at ¶ 15 citingFerguson, 76 Ohio App.3d at 751, 603 N.E.2d 345.
 {¶ 27} In the present case, Smith was afforded a meaningful opportunity to be heard on all of the issues relevant to subsections (i), (ii), and (iii) of R.C. 955.11 (A)(4)(a). Accordingly, she was not deprived of her due process rights.
 {¶ 28} We note that although Smith testified at trial, she did not present any specific testimony regarding the demonstrated conduct, temperament and disposition of her dog. Smith's only assertion was that her dog was a boxer mix breed dog, and that she was unsure as to what the other half breed of her dog actually was. Furthermore, we note that the court even questioned Smith and her witness, giving Smith additional opportunities to rebut the presumption that her dog was, in fact, a vicious dog. However, the only time Smith mentioned the temperament or behavior of her dog was during sentencing. *Page 16 
 {¶ 29} Our review of the record reveals that after weighing all of the evidence presented at trial, the trial court found the evidence and testimony presented by the State to be more credible than that presented by Smith. Specifically, the trial court found that the dog wardens were "qualified to identify the dog as a pit bull according to the testimony I heard and the law as written in the State of Ohio." Thus, the trial court determined that the evidence presented at trial supported a verdict that Smith was guilty of both charges.
 {¶ 30} Based on the foregoing, we find no evidence that the trial court prohibited Smith from providing rebuttal testimony that her dog was not vicious. Additionally, we find that the trial court listened to all of the evidence presented and allowed Smith numerous opportunities to rebut the evidence presented by the State; Smith simply failed to take advantage of these opportunities. Therefore, we find that Smith was not deprived of the right to rebut the prima facie evidence presented by the State, and find that the trial court's guilty verdict was supported by sufficient, credible evidence.
 {¶ 31} Additionally, Smith alleges that courts have erred when finding that a mixed breed dog is subject to the provisions of R.C. 955.11. Specifically, Smith alleges that her dog, identified as a pit bull mix, does not fit the statutory definition contained in R.C.955.11(A)(4)(a)(iii). *Page 17 
 {¶ 32} We note that the Twelfth District Court of Appeals has determined that the language of R.C. 955.11 does not refer to purebred pit bull dogs. See State v. Robinson (1989), 44 Ohio App.3d 128, 133,541 N.E.2d 1092. "Rather, the phrase `commonly known as a pit bull dog' refers to those animals which display the physical characteristics generally conforming to the various standards normally associated with pit bulls." Id. Thus, "[i]t is apparent that "pit bull" does not refer to one particular breed, but encompasses several breeds or a cross-section thereof." Id.; see also City of Lima v. McFadden, (June 30, 1996) 3rd Dist. No. 1-85-22, unreported, (wherein this court determined that "[w]hether any particular animal falls within this classification is an issue of fact to be determined by the evidence presented.").
 {¶ 33} In the present case, the dog wardens testified that although they observed some traits common to the breed of boxer in Smith's dog, they still observed characteristics common to a pit bull. Specifically, the wardens testified that they observed Smith's dog to have a boxy head, broad shoulders, and muscular jaws; all characteristics found in pit bull dogs. Additionally, although Smith testified that her dog was a "boxer-mix" breed dog, she admitted that she was unsure as to what breed made up the other half breed of her dog. Accordingly, as the dog wardens were able to reasonably identify Smith's dog as a pit bull mix, this breed of dog fits the definition of a vicious dog pursuant to R.C. *Page 18 955.11; i.e. a dog belonging to a breed commonly known as a pit bull dog. Therefore, the trial court correctly found that Smith was subjected to the statutory requirements set forth in R.C. 955.22.
 {¶ 34} Based on the foregoing, Smith's first, second, third, fifth and sixth assignments of error are overruled.
 Assignment of Error No. 4 {¶ 35} In her fourth assignment of error, Smith alleges that the trial court erred when it relied on an Attorney General's opinion in reaching its decision to deny her motion for a new trial. Specifically, Smith challenges the ability of a dog warden to classify her dog as a pit bull.
 {¶ 36} As a preliminary matter, we note that although an attorney general's opinion is not binding authority, it is persuasive. SeeState ex rel. N. Olmsted Fire Fighters Assn. v. City of N. Olmsted
(1992), 64 Ohio St.3d 530, 533, 597 N.E.2d 136, 139. The Attorney General opinion specifically at issue in the present case is 1989 Ohio Att. Gen. Ops. No. 89-091. This opinion found that as county dog wardens are charged with the enforcement of R.C. 95511 and R.C. 955.22, they are therefore "authorized to identify pit bull dogs in order to enforce the provisions" of R.C. 955.11 and R.C. 955.22. OAG No. 89-091 at 2-435. Although the opinion does not specifically provide what training, experience, or credentials are required for identifiers of pit bull dogs, it does provide that "any *Page 19 
identification of a pit bull dog by an individual charged with the enforcement of R.C. 955.11 and R.C. 955.22 must be reasonable."Id.
 {¶ 37} In the present case, both dog wardens testified regarding their training and experience in identifying pit bull dogs. Both dog wardens also testified regarding various charts and pictures with descriptions and characteristics they use to assist them in identifying pit bull dogs. Finally, we note that both wardens testified that they identified Smith's dog as a pit bull.
 {¶ 38} The record reflects that at the close of all the evidence, the trial court specifically referenced the testimony of the dog wardens and OAG No. 89-901 and stated "I find that these individuals are qualified to identify the dog as a pit bull according to the testimony I heard and the law as written in the State of Ohio." (Tr. p. 63). Additionally, in its August 27, 2007 Journal Entry overruling Smith's motion for a new trial, the trial court found as follows:
 The Court finds that the dog was properly identified as a pit bull. The Dog Warden and an employee of the Dog Warden identified Defendant's dog as a pit bull and described the characteristics of a pit bull. (OAG 89-091). The Court was shown a picture of the Defendant's dog and observed the dog to have the characteristics described by the State's witnesses.
 {¶ 39} Based on the foregoing, we find that the trial court correctly interpreted and relied on both OAG No. 89-091 and on the testimony presented by the dog wardens at trial regarding their experience, training, and ability to ultimately classify Smith's dog as a pit bull or pit bull mix breed dog. Again, this *Page 20 
is a matter of weight and credibility for the trial court to assign to the testimony from both sides on this issue. Accordingly, we do not find that the trial court erred when it relied on an Attorney General's opinion or the weight assigned to the testimony before the court in reaching its decision to deny Smith's motion for a new trial.
 {¶ 40} We also note that under this assignment of error, Smith alleges that the trial court erred in finding that she failed to satisfy the requirements of R.C. 955.22(E), which requires that all persons having vicious dogs are required to obtain liability insurance. The Supreme Court of Ohio has stated that the requirements of R.C. 955.22(E) and (F)[2] are rationally related to the state's interest in protecting its citizens from pit bulls and in assuring those who are injured by a pit bull that they will be compensated for their injuries. Toledo v.Tellings, supra at ¶ 28.
 {¶ 41} At trial, Smith maintained that the insurance policy she obtained on January 12, 2007 covered her dog, but admitted that she obtained the policy for both her dog and her home. Our review of the record reveals that there was no testimony provided that indicated that Smith's policy would cover another's loss due to a vicious dog. Additionally, we note that when questioned by the trial court as to where in the policy it states that it covers either an animal or pit bull for *Page 21 
liability, Smith admitted that there was nothing in the policy that stated as such. Instead, Smith believed that her dog would be covered under the personal property section of the policy. Furthermore, when questioned by the court at to whether the terms "dog" or "bite" appear anywhere in the policy, Smith admitted that those terms are not contained in the policy.
 {¶ 42} The dog wardens testified that Smith provided them with a copy of her insurance policy. However, the wardens testified that upon review of the policy, they determined that it did not contain language that would lead them to believe that the policy covered a vicious dog.
 {¶ 43} At the close of the evidence, the trial court specifically found as follows:
 I find that first of all on the issue of insurance . . . nothing here indicates to me that the animal is covered. I don't understand the interpretation given to the policy I was handed. I don't see no place that it mentions dogs, bitings, or covering a person that's bitten by a dog, especially anything that would cover a pit bull. So upon review of the evidence the court would find the State of Ohio has proven the defendant guilty beyond a reasonable doubt on the insurance issue.
 {¶ 44} Therefore, we find that the trial court did not err in finding Smith guilty of failure to obtain liability insurance for her dog as required by R.C. 955.22(E) as the trial court's decision was supported by sufficient, credible evidence. *Page 22 
 {¶ 45} Based on the foregoing, Smith's fourth assignment of error is overruled.
 Assignment of Error No. 7 {¶ 46} In her seventh assignment of error, Smith alleges that the trial court erred in requiring her to have a fenced-in yard with a cover over it so as to satisfy the provisions of R.C. 955.22(D)(1). We note that Smith does not set forth any argument for this specific assignment of error, other than to cite State v. Walker, 2nd Dist. No. 2003-CA-94, 2004-Ohio-7259.
 {¶ 47} R.C. 955.22(D)(1) provides as follows:
 (D) Except when a dangerous dog or vicious dog is lawfully engaged in hunting or training for the purpose of hunting and is accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of a dangerous or vicious dog shall fail to do either of the following:
 (1) While that dog is on the premises of the owner, keeper, or harborer, securely confine it at all times in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained; (Emphasis added).
Thus, R.C. 955.22(D)(1) sets forth the three ways to properly confine a vicious dog while on the owner's property.
 {¶ 48} In the present case the record reflects that the trial court attempted to inform Smith as to the proper confinement requirements for her dog. Specifically, the court advised Smith that she would need to keep her dog in a kennel with a *Page 23 
secured roof and a padlock. We note that this method of confinement meets the requirements of R.C. 955.22(D)(1) as it would be considered a locked pen or enclosure that would have a top. Our review of the record does not indicate that the trial court, at any time, ordered Smith to confine her dog in a fenced-in yard with a roof over it. We note that as Smith already has a fenced-in backyard, another means of properly confining her dog pursuant to R.C. 955.22(D)(1) would be to lock the secured fence.
 {¶ 49} Additionally, we note that Smith alleges that the trial court erred when it required, as part of her probation, that she only put the dog outside in a fenced-in yard, if that yard has a cover. However, the terms of Smith's probation are not a part of the record. Furthermore, Smith's allegation that the trial court made such a requirement does not appear in the May 22, 2007 Journal Entries or the June 12, 2007 Journal Entry of Finding by the Court and Criminal Sentencing.
 {¶ 50} Accordingly, as there is no evidence before this court that the trial court ordered Smith to have a top over her fenced-in yard, Smith's seventh assignment of error is overruled.
 Assignment of Error No. 8 {¶ 51} In her eighth assignment of error, Smith alleges that her trial counsel was ineffective, thus violating her rights under the United States and Ohio Constitutions. *Page 24 
 {¶ 52} The Supreme Court of Ohio has adopted a two-part test for determining claims of ineffective assistance of counsel in criminal prosecutions. See State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, at paragraph two of the syllabus, (following Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct.2052, 80 L.Ed.2d 674).
 {¶ 53} Under this test, "[Appellant] must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."' State v. Jones, 3rd Dist. No. 02-2000-07, 2000-Ohio-1879 quotingStrickland, 466 U.S. at 688, 694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley, 42 Ohio St.3d at 142. The second prong regarding reasonable probability requires a probability sufficient to undermine the confidence in the outcome of the trial. Id.
 {¶ 54} Additionally, we note that Smith bears the burden of proof on the issue of counsel's ineffectiveness, since in Ohio a properly licensed attorney is presumed competent. State v. Calhoun (1999),86 Ohio St.3d 279, 289, 714 N.E.2d 905. Moreover, Smith must overcome a strong presumption that the challenged action constitutes trial strategy. State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 905. "Many trial tactics may be questioned after an *Page 25 
unfavorable result. A fair assessment of attorney performance requires us to eliminate the distorting effect of hindsight." State v. Post
(1987), 32 Ohio St.3d 380, 388, 513 N.E.2d 754, cert. denied (1988),848 U.S. 1079.
 {¶ 55} Specifically regarding her claim of ineffective assistance of counsel, Smith alleges that she was denied effective assistance of counsel because her trial counsel failed to adequately cross-examine the dog warden to determine whether or not the warden truly recognized a pit-bull when he saw one.
 {¶ 56} However, our review of the record reveals that Smith's counsel conducted an adequate and extensive cross-examination of the State's witnesses. The record reflects that Smith's counsel questioned Deputy Wilmoth about the events occurring on January 30, 2007 as well as the prior contact the warden had with Smith and her dog. Smith's counsel also questioned Wilmoth about his specific training in determining whether a dog is a pit bull or a pit bull mix. Additionally, Smith's counsel questioned Deputy Durkee, in relevant part, as follows:
 Attorney: Deputy, have you any special training, course training on determining pit bull, pit bull mixes?
 Durkee: No sir.
 Attorney: Have you ever been tested on whether or not you are able to determine pit bull or pit bull mixes?
 Durkee: No sir.
 * * *
 Attorney: So it's your determination is that this is a pit bull, pit bull mix face is based upon a lay opinion, no scientific opinion? *Page 26 
 Durkee: Yes sir.
 {¶ 57} We also note that the record reflects Smith's counsel's zealous and thorough representation of Smith's interests throughout the hearing. Specifically, we note that Smith's counsel conducted an in-depth direct examination of her, which allowed Smith numerous opportunities to explain herself and her actions, and allowed her every opportunity to participate during the trial.
 {¶ 58} Therefore, we find that Smith has failed to establish that her trial counsel's performance was deficient in any form. Moreover, we find that she has failed to show prejudice resulting from any alleged deficiency. Thus, we conclude that the outcome of the trial would not have been different. Accordingly, Smith's argument lacks merit and we overrule her eighth assignment of error.
 {¶ 59} Based on the foregoing, the May 22, 2007 and August 27, 2007 Judgment Entries of the Lima Municipal Court are affirmed.
Judgments Affirmed.
 PRESTON and WILLAMOWSKI, J.J., concur.
[1] Wilmoth testified that Smith's dog had the proper dog tags at the time of his second encounter with Smith.
[2] We note that R.C. 955.22(F) addresses the debarking and surgically silencing of dogs that are vicious dogs. This specific subsection of R.C. 955.22 is not relevant to the present case. *Page 1