CITY OF TOLEDO, APPELLANT, *v.* TELLINGS, APPELLEE.

[Cite as *Toledo v. Tellings*, 114 Ohio St.3d 278, 2007-Ohio-3724.]

(No. 2006–0690—Submitted April 4, 2007—Decided August 1, 2007.)

**Moyer, C.J.**

{¶ 1} Appellant, the city of Toledo, appeals from the judgment of the Court of Appeals of Lucas County that held R.C. 955.11 and 955.22 and Toledo Municipal Code 505.14 unconstitutional. For the following reasons, we reverse the judgment of the court of appeals.

{¶ 2} Appellee, Paul Tellings, a resident of the city of Toledo, owned three dogs identified as pit bulls. Tellings was charged by the city for violating Toledo Municipal Code 505.14(a) and R.C. 955.22. The Toledo Municipal Code limits ownership of vicious dogs, as defined in R.C. 955.11, or dogs commonly known as pit bulls or pit bull mixed breeds, to one in each household, and the Ohio Revised Code requires an owner of a pit bull to obtain liability insurance for damages, injuries, or death that might be caused by the dog.

{¶ 3} Tellings challenged the constitutionality of Toledo Municipal Code 505.14(a) and R.C. 955.22 and 955.11(A)(4)(a)(iii), which includes pit bull in the definition of "vicious dog." The trial court conducted a hearing on appellee's motion, and several witnesses testified for both parties regarding the traits and characteristics of pit bulls. The court found that as a breed, pit bulls are not more dangerous than other breeds but that the evidence supported the city's claim that pit bulls present dangers in an urban setting.

{¶ 4} The trial court found that property rights are subject to a government's police powers. The court stated: "The fact that such legislation may have an adverse effect on a segment of the dog population not presenting a danger to the public does not make the legislation overbroad. Legislation will only be considered overbroad if it is applicable to conduct protecting a fundamental constitutional right * * * and this does not include the category of ownership of dogs." The court found that Tellings's evidence did not prove beyond a reasonable doubt that Toledo Municipal Code 505.14 was unconstitutional.[1]

{¶ 5} In a split decision, the court of appeals reversed the trial court, holding that R.C. 955.11 and 955.22 and Toledo Municipal Code 505.14 were unconstitutional. *Toledo v. Tellings*, Lucas App. L–04–1224, 2006-Ohio-975, 2006 WL

---

1. The trial court found only Toledo Municipal Code 505.14 constitutional, which was the law specifically challenged in the caption of Tellings's *motion to dismiss*, though he did argue the constitutionality of Toledo Municipal Code 505.14 and R.C. 955.11 and 955.22 in the action. When reviewing the decision of the trial court, the court of appeals reviewed the constitutionality of all three laws.

513946. The court of appeals held that the three laws violated the right to procedural due process, substantive due process, and equal protection, as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution, and were void for vagueness.

{¶ 6} First, relying on the rationale of *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, the court of appeals held that R.C. 955.11 and 955.22 and Toledo Municipal Code 505.14 were unconstitutional because the three laws violated procedural due process. In *Cowan*, we held that "R.C. 955.22 violates the constitutional right to procedural due process insofar as it failed to provide dog owners a meaningful opportunity to be heard on the issue of whether a dog is 'vicious' or 'dangerous' as defined in R.C. 955.11(A)(1)(a) and (A)(4)(a)." Id. at syllabus. In this case, the court of appeals held that because Tellings did not "have an opportunity under [R.C. 955.22] to offer evidence that his pit bulls were not vicious in order to refute the charges," *Tellings*, 2006-Ohio-975, 2006 WL 513946, at ¶ 48, the laws were unconstitutional.

{¶ 7} The court of appeals also held that the laws violated Tellings's rights to equal protection and substantive due process because, once the trial court had determined that the American Pit Bull terrier was not inherently dangerous, the laws were not rationally related to a legitimate state interest. The court of appeals stated that the evidence presented at the trial court had disproved the presumption that pit bulls are inherently dangerous.

{¶ 8} Finally, the court of appeals held that the three laws were unconstitutional because they were void for vagueness. The court of appeals stated that it was "troubled by the lack of an exact statutory definition of 'pit bull' " and the "highly subjective nature of the identification process." *Tellings*, 2006-Ohio-975, 2006 WL 513946, at ¶ 73.

{¶ 9} We accepted discretionary review to consider the constitutionality of R.C. 955.11 and 955.22 and Toledo Municipal Code 505.14.

{¶ 10} R.C. 955.11 states:

{¶ 11} "(A) As used in this section:

{¶ 12} " * * *

{¶ 13} "(4)(a) 'Vicious dog' means a dog that, without provocation and subject to division (A)(4)(b) of this section, meets any of the following:

{¶ 14} "(i) Has killed or caused serious injury to any person;

{¶ 15} "(ii) Has caused injury, other than killing or serious injury, to any person, or has killed another dog.

{¶ 16} "(iii) Belongs to a breed that is commonly known as a pit bull dog. The ownership, keeping, or harboring of such a breed of dog shall be prima-facie evidence of the ownership, keeping, or harboring of a vicious dog."

{¶ 17} R.C. 955.22(A) states:

{¶ 18} "As used in this section, 'dangerous dog' and 'vicious dog' have the same meanings as in section 955.11 of the Revised Code."

{¶ 19} Toledo Municipal Code 505.14(a) states:

{¶ 20} "(a) No person or organization or corporation shall own, keep, harbor or provide sustenance for more than one vicious dog, as defined by Ohio R.C. 955.11, or a dog commonly known as a Pit Bull or Pit Bull mixed breed dog, regardless of age, in the City of Toledo, with the exception of puppies commonly known as Pit Bull or Pit Bull mixed breed for which the owner has filed an ownership acknowledgement form in person with the Dog Warden of Lucas County, prior to reaching seven (7) days of age. The ownership of these puppies must be transferred according to Ohio R.C. 955.11 before they are three (3) months of age. Additionally, this section requires that all vicious dogs, as described in the Ohio Revised Code, or dogs commonly known as Pit Bull or Pit Bull mixed breed dogs are required, when off the owners' premises, to be securely confined as described in Ohio R.C. 955.22 and muzzled."

{¶ 21} Our resolution of the issue presented turns on whether the statutes and the ordinance in question are valid exercises of police power by the state and the city. If R.C. 955.11 and 955.22 and Toledo Municipal Code 505.14 are rationally related to a legitimate interest of the state and the city in the public's health, safety, morals, or general welfare, they are constitutional. See *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 4 O.O.2d 113, 146 N.E.2d 854, at paragraph five of the syllabus.

{¶ 22} We begin with the well-established legal principle that " '[t]he legislature is the primary judge of the needs of public welfare, and this court will not nullify the decision of the legislature except in the case of a clear violation of a state or federal constitutional provision. *Williams v. Scudder* (1921), 102 Ohio St. 305, 131 N.E. 481, paragraphs three and four of the syllabus.' " *Beagle v. Walden* (1997), 78 Ohio St.3d 59, 61, 676 N.E.2d 506, quoting *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 515, 620 N.E.2d 809 (Moyer, C.J., dissenting).

{¶ 23} The Ohio Constitution provides for the exercise of state and local police power in derogation of the right to hold private property. Section 19, Article I of the Ohio Constitution states: "Private property shall ever be held inviolate, but subservient to the public welfare." "As a result of this subordination, police power regulations are upheld although they may interfere with the enjoyment of liberty or the acquisition, possession and production of private property." *State v. Anderson* (1991), 57 Ohio St.3d 168, 170, 566 N.E.2d 1224. Section 3, Article XVIII of the Ohio Constitution provides: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their

limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

{¶ 24} "Among the regulations which have been upheld as legitimate exercises of police power are those regulations addressing the ownership and control of dogs." *Anderson*, 57 Ohio St.3d at 170, 566 N.E.2d 1224. Despite the special relationships that exist between many people and their dogs, dogs are personal property, and the state or the city has the right to control those that are a threat to the safety of the community: "Although dogs are private property to a qualified extent, they are subject to the state police power, and 'might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens.' * * * [L]egislatures have broad police power to regulate all dogs so as to protect the public against the nuisance posed by a vicious dog." Id., citing *Sentell v. New Orleans & Carrollton RR. Co.* (1897), 166 U.S. 698, 17 S.Ct. 693, 41 L.Ed. 1169.

{¶ 25} The state and the city have a legitimate interest in protecting citizens against unsafe conditions caused by pit bulls. We note that substantial reputable evidence was presented at the trial court by both parties: the parties produced 18 witnesses, dozens of exhibits were admitted into evidence, and more than 1,000 pages of testimony were taken. The trial court found that there is little evidence that pit bulls are a dangerous breed when trained and adapted in a social situation and that there is no evidence that pit bulls bite more frequently than other breeds of dogs. However, the trial court correctly noted that its finding that pit bulls are not inherently dangerous does not necessarily lead to the conclusion that the laws at issue are unconstitutional. Rather, the evidence was evaluated to determine whether pit bulls were associated with problem circumstances.

{¶ 26} The trial court cited the substantial evidence supporting its conclusion that pit bulls, compared to other breeds, cause a disproportionate amount of danger to people. The chief dog warden of Lucas County testified that (1) when pit bulls attack, they are more likely to inflict severe damage to their victim than other breeds of dogs, (2) pit bulls have killed more Ohioans than any other breed of dog, (3) Toledo police officers fire their weapons in the line of duty at pit bulls more often than they fire weapons at people and all other breeds of dogs combined, and (4) pit bulls are frequently shot during drug raids because pit bulls are encountered more frequently in drug raids than any other dog breed. The trial court also found that pit bulls are "found largely in urban settings where there are crowded living conditions and a large number of children present," which increases the risk of injury caused by pit bulls.

{¶ 27} The evidence presented in the trial court supports the conclusion that pit bulls pose a serious danger to the safety of citizens. The state and the city

have a legitimate interest in protecting citizens from the danger posed by this breed of domestic dogs.

{¶ 28} The statutes and the city ordinance are rationally related to serve the legitimate interests of protecting Ohio and Toledo citizens. R.C. 955.11(A)(4)(a)(iii) states that "vicious dog" includes a dog that "[b]elongs to a breed that is commonly known as a pit bull dog" and that owning, keeping, or harboring a pit bull is prima facie evidence of owning, keeping, or harboring a vicious dog. In view of the unique problems posed by pit bulls in this state, the General Assembly requires owners of pit bulls, like owners of vicious dogs, to meet certain statutory requirements. In R.C. 955.22(E), all persons having vicious dogs are required to obtain liability insurance, and under R.C. 955.22(F), vicious dogs cannot be surgically silenced. These requirements are rationally related to the state's interest in protecting its citizens from pit bulls and in assuring those who are injured by a pit bull that they will be compensated for their injuries.

{¶ 29} Toledo Municipal Code 505.14 limits ownership to one pit bull per person, organization, or corporation, and requires that pit bulls be muzzled when not on the owner's premises. The limitation and requirement are rationally related to the city's interest in protecting its citizens from harm caused by pit bulls. In addition to the evidence cited above, the chief dog warden testified that an encounter with two aggressive dogs is much worse than an encounter with one aggressive dog because dogs in a pack are more likely to have increased aggressive behavior and act on predatory instincts.

{¶ 30} The court of appeals found R.C. 955.11 and 955.22 and Toledo Municipal Code 505.14 unconstitutional with respect to procedural due process, substantive due process, and equal protection, and under the void-for-vagueness doctrine. We disagree.

{¶ 31} First, the court of appeals declared that the laws violated procedural due process pursuant to State v. Cowan, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846. In Cowan, a Portage County deputy dog warden determined two dogs to be vicious following a complaint that the dogs had attacked a woman. Id. at ¶ 1. The dogs were determined to be vicious because of the alleged attack, not because they were pit bulls. We held that when a dog is determined to be "vicious" under R.C. 955.11(A)(4)(a), procedural due process requires that the owner have notice and an opportunity to be heard before the owner is charged with a crime. Id. at ¶ 13.

{¶ 32} In Cowan, the dogs were determined to be vicious under the first two subsections of R.C. 955.11(A)(4)(a) because they had caused injury to a person. Thus, the case concerned the dog warden's unilateral classification of the dogs as vicious. However, in this case, the "vicious dogs" at issue are those classified as

pit bulls under the third subsection of R.C. 955.11(A)(4)(a). Unlike the situation in *Cowan*, the General Assembly has classified pit bulls generally as vicious; there is no concern about unilateral administrative decision-making on a case-by-case basis. The clear statutory language alerts all owners of pit bulls that failure to abide by the laws related to vicious dogs and pit bulls is a crime. Therefore, the laws do not violate the rights of pit bull owners to procedural due process.

{¶ 33} Second, R.C. 955.11 and 955.22 and Toledo Municipal Code 505.14 are not unconstitutional for violating substantive due process or equal protection rights. Laws limiting rights, other than fundamental rights, are constitutional with respect to substantive due process and equal protection if the laws are rationally related to a legitimate goal of government. See *State v. Thompkins* (1996), 75 Ohio St.3d 558, 560–561, 664 N.E.2d 926. As we discussed previously when evaluating whether the statutes and ordinance in question are valid exercises of state and city police power, R.C. 955.11 and 955.22 and Toledo Municipal Code 505.14 are rationally related to a legitimate government interest.

{¶ 34} Finally, the court of appeals erred in holding that R.C. 955.11 and 955.22 and Toledo Municipal Code 505.14 are void for vagueness. This court has previously held that the term "pit bull" is not unconstitutionally void for vagueness. In *State v. Anderson*, we stated: "In sum, we believe that the physical and behavioral traits of pit bulls together with the commonly available knowledge of dog breeds typically acquired by potential dog owners or otherwise possessed by veterinarians or breeders are sufficient to inform a dog owner as to whether he owns a dog commonly known as a pit bull dog." 57 Ohio St.3d 168, 173, 566 N.E.2d 1224.

{¶ 35} In conclusion, the state and the city of Toledo possess the constitutional authority to exercise police powers that are rationally related to a legitimate interest in public health, safety, morals, or general welfare. Here, evidence proves that pit bulls cause more damage than other dogs when they attack, cause more fatalities in Ohio than other dogs, and cause Toledo police officers to fire their weapons more often than people or other breeds of dogs cause them to fire their weapons. We hold that the state of Ohio and the city of Toledo have a legitimate interest in protecting citizens from the dangers associated with pit bulls, and that R.C. 955.11(A)(4)(a)(iii) and 955.22 and Toledo Municipal Code 505.14 are rationally related to that interest and are constitutional.

{¶ 36} For the foregoing reasons the judgment of the court of appeals is reversed.

Judgment reversed.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER and CUPP, JJ., concur.

O'CONNOR, J., concurs in judgment only.

O'CONNOR, J., concurring in judgment only.

{¶ 37} I concur in judgment only to emphasize my disapproval of R.C. 955.11(A)(4)(a)(iii), which identifies pit bulls as vicious animals per se.

{¶ 38} Breed-specific prohibitions, limitations, and restrictions are justified by labeling dogs as "inherently dangerous" by virtue of the particular breed's alleged characteristics. Contrary to that assumption, dangerous animal behavior is the function of inherently dangerous *dog owners*, not inherently dangerous dogs.

{¶ 39} The statistics offered at trial in this case may support a correlation between pit bulls and the frequency and severity of injuries they cause to people in urban settings, but they do not establish the conclusion that pit bulls must necessarily pose a danger. Indeed, experts in the canine field who rate the temperament of different breeds of dogs conclude that pit bulls have a better temperament than many other common breeds of dogs used as pets, including the miniature poodle and Shih–Tzu. See Karyn Grey, Breed–Specific Legislation Revisited: Canine Racism or the Answer to Florida's Dog Control Problems? (2003), 27 Nova L.Rev. 415, 436, and fns. 147 and 148.

{¶ 40} A more thorough analysis of the dynamic would demonstrate that the danger posed is the result of some dog owners, including drug dealers, who deliberately increase the dog's aggression and lethality through abuse or other specific methods of training. Other owners simply fail to properly train and supervise the animal, thereby creating dangerous behavior by the dog.

{¶ 41} Almost all domestic animals can cause significant injuries to humans, and it is proper to require that all domestic animals be maintained and controlled. Laws to that effect are eminently reasonable for the safety of citizens and of the animal. Because the danger posed by vicious dogs and pit bulls arises from the owner's failure to safely control the animal, rational legislation should focus on the owner of the dog rather than the specific breed that is owned.

---

John T. Madigan, Toledo Acting Law Director, Adam Loukx, General Counsel, and Joseph Howe and Daniel R. Pilrose Jr., Assistant Prosecuting Attorneys, for appellant.

Rubin & Zyndorf Associates, P.C., and Sol Zyndorf, for appellee.

Marc Dann, Attorney General, Elise W. Porter, Acting State Solicitor, Stephen P. Carney, Senior Deputy Solicitor, Robert J. Krummen, Deputy Solicitor, and

Daniel W. Fausey and Todd Marti, Assistant State Solicitors, urging reversal for amicus curiae Ohio Attorney General.

Robert J. Triozzi, Cleveland Law Director, and Victor R. Perez, Chief Prosecutor, urging reversal for amicus curiae city of Cleveland.

Debora M. Bresch, urging affirmance for amicus curiae American Society for the Prevention of Cruelty to Animals.

Scott J. Saum and Carolyn Chan, urging affirmance for amicus curiae American Canine Foundation.