**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 27, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SONYA DIAS; HILARY ENGEL; and
SHERYL WHITE, individually and on
behalf of all persons similarly situated,

      Plaintiffs–Appellants,

v.

THE CITY AND COUNTY OF
DENVER; JOHN W.
HICKENLOOPER, individually and in
his official capacity; NANCY
SEVERSON, individually and in her
official capacity; DOUG KELLY,
individually and in his official capacity;
and JUAN ZALASAR, individually and
in his official capacity,

      Defendants–Appellees.

------------------------------

HUMANE SOCIETY OF THE UNITED
STATES; ANIMAL LEGAL DEFENSE
FUND; and AMERICAN SOCIETY
FOR THE PREVENTION OF
CRUELTY TO ANIMALS,

      Amici Curiae.

No. 08-1132

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 07-CV-00722-WDM)**

Steven S. Rosenthal (Alan K. Palmer; Karen R. Breslin, Progressive Law Center, LLC; and Michael F. Swick, American Kennel Club with him on the briefs), Kaye Scholer LLP, Washington, D.C., for the Plaintiffs-Appellants.

Michael J. Joyce (John M. Eckhardt and Stuart L. Shapiro with him on the briefs), Office of the City Attorney, Denver, Colorado, for the Defendants-Appellees.

James W. Hubbell, Kelly, Garnsey, Hubbell & Lass LLC, Denver, Colorado, and Ethan Carson Eddy and Jessica Culpepper, Of Counsel, The Humane Society of the United States, Washington, D.C., filed an Amicus Curiae brief for The Humane Society of the United States in support of Plaintiffs-Appellants.

Megan A. Senatori, DeWitt Ross & Stevens, S.C., Madison, Wisconsin, filed an Amicus Curiae brief for the Animal Legal Defense Fund, in support of Plaintiffs-Appellants.

Debora M. Bresch, Americn Society for the Prevention of Cruelty to Animals, New York, New York, filed an Amicus Curiae brief for the American Society for the Prevention of Cruelty to Animals, in Support of Plaintiffs-Appellants.

Before **TACHA**, **EBEL**, and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

We consider a constitutional challenge to a Denver city ordinance banning a category of dogs commonly known as "pit bulls."[1]  Sonya Dias, Hilary Engel,

---

[1] Throughout this opinion, we follow the lead of the parties by referring to

(continued...)

and Sheryl White allege that the pit bull ban violates the Fourteenth Amendment because it: (1) is unconstitutionally vague on its face; and (2) deprives them of substantive due process. Before the plaintiffs had any opportunity to present evidence to support their claims, the district court dismissed both claims under Federal Rule of Civil Procedure 12(b)(6). On appeal, the plaintiffs argue that the district court erred by prematurely dismissing the case at the 12(b)(6) stage. We agree in part.

We conclude that the plaintiffs lack standing to seek prospective relief for either claim because they have not shown a credible threat of future prosecution. We also determine that the district court correctly dismissed the facial vagueness challenge because the pit bull ban is not vague in all its applications. However, taking the factual allegations in the complaint as true, the plaintiffs have plausibly alleged that the pit bull ban is not rationally related to a legitimate government interest. Accordingly, we conclude that the district court erred in dismissing the substantive due process claim insofar as the plaintiffs seek retrospective relief. Our jurisdiction arises under 28 U.S.C. § 1291, and we dismiss in part, affirm in part, reverse in part, and remand.

---

[1](...continued)
animals banned by this ordinance as "pit bulls."

# I

## A

Section 8-55 of the Revised Municipal Code of the City and County of Denver ("the Ordinance") provides:

Sec. 8-55. Pit bulls prohibited.

(a) It shall be unlawful for any person to own, possess, keep, exercise control over, maintain, harbor, transport, or sell within the city any pit bull.

(b) Definitions. . . .

(2) A "pit bull," for purposes of this chapter, is defined as any dog that is an American Pit Bull Terrier, American Staffordshire Terrier, Staffordshire Bull Terrier, or any dog displaying the majority of physical traits of any one (1) or more of the above breeds, or any dog exhibiting those distinguishing characteristics which substantially conform to the standards established by the American Kennel Club or United Kennel Club for any of the above breeds. The A.K.C. and U.K.C. standards for the above breeds are on file in the office of the clerk and recorder, ex officio clerk of the City and County of Denver, at City Clerk Filing No. 89457.

Denver, Colo., Rev. Mun. Code § 8-55.[2]  The Ordinance has both civil and

criminal components.  Colo. Dog Fanciers, Inc. v. City & County of Denver, 820

P.2d 644, 647 (Colo. 1991) (en banc).  As a civil measure, the Ordinance allows

officials to impound any pit bull found within the City and County of Denver

("Denver" or "the City").  § 8-55(e); Colo. Dog Fanciers, 820 P.2d at 647.  If a

dog is seized, an owner has the right to a post-seizure hearing at which Denver

must prove by a preponderance of the evidence that the dog is in fact a pit bull.

§ 8-55(f); Colo. Dog Fanciers, 820 P.2d at 649 (citing Colo. Rev. Stat. § 13-25-

127).  "If the dog is found to be a pit bull, it will be destroyed unless the owner

pays the costs of impoundment and agrees to permanently remove the animal from

Denver."  Colo. Dog Fanciers, 820 P.2d at 647 (citing Denver, Colo., Rev. Mun.

Code § 8-55(f)).

---

[2] American Kennel Club ("AKC") and United Kennel Club ("UKC") standards were not attached to the complaint filed in the district court.  However, because the Ordinance itself incorporates those standards by reference, we take judicial notice of them.  See United States v. Williams, 442 F.3d 1259, 1261 (10th Cir. 2006).  These standards are easily accessible on the internet.  See American Kennel Club, Complete Breed List, http://www.akc.org/breeds/complete_breed_list.cfm (last visited May 12, 2009); United Kennel Club, Full List of UKC Breeds, http://www.ukcdogs.com/WebSite.nsf/WebPages/LrnBreedInfoFullList (last visited May 12, 2009).  It appears that both the AKC and UKC periodically revise their breed standards, but it is unclear from the record whether Denver's Clerk and Recorder updates the standards on file in its office with every revision.  Thus, where we quote from the breed standards in the course of this opinion, we rely on the versions of the standards attached as exhibits to the plaintiffs' opening brief.

Violating the Ordinance is also a criminal offense. § 1-13(a) ("[W]henever any section of this Code or any section of a rule or regulation promulgated hereunder requires, prohibits or declares to be unlawful the doing of any act, any violation of such section is hereby declared to be a criminal violation."); Colo. Dog Fanciers, 820 P.2d at 647-48. If the City chooses to pursue criminal charges against a dog owner, it must prove a violation of the Ordinance beyond a reasonable doubt. Colo. Dog Fanciers, 820 P.2d at 649; see In re Winship, 397 U.S. 358, 364 (1970). An individual convicted of violating the Ordinance "shall, for each offense, be fined in a sum not more than nine hundred ninety-nine dollars ($999.00) or imprisoned not to exceed one (1) year, or both so fined and imprisoned." § 1-13(a).

Denver originally enacted the Ordinance in 1989. Colo. Dog Fanciers, 820 P.2d at 646. Shortly after its enactment, a coalition of dog owners and humane associations challenged the constitutionality of the Ordinance in Colorado state court. Id. They alleged that the Ordinance deprived them of procedural due process, substantive due process, and equal protection of the laws. Id. at 647. They also claimed that the ordinance was void for vagueness and amounted to an unconstitutional taking. Id. The Colorado Supreme Court rejected each of these challenges, id. at 650-54, and the Ordinance remained in force until April 2004.

On April 21, 2004, then-Governor Bill Owens signed House Bill 04-1279, which prohibited Colorado municipalities from enacting breed-specific

legislation.  See Colo. Rev. Stat. § 18-9-204.5(5)(a).  Denver suspended enforcement of the Ordinance in compliance with the new law and filed a lawsuit in state court seeking a declaratory judgment that the law violated home rule provisions of the Colorado Constitution.  The state court ruled in favor of Denver, and the City resumed enforcement of the Ordinance on May 9, 2005.  According to the plaintiffs, Denver has impounded and killed at least 1,100 dogs since enforcement resumed.

**B**

Because this case reaches us following Denver's successful motion to dismiss, we assume the truth of all well-pleaded facts in the plaintiffs' complaint.  See Gann v. Cline, 519 F.3d 1090, 1091 (10th Cir. 2008).  Under that standard, the facts are as follows.  Each of the three named plaintiffs owns a dog she fears could be seized or destroyed under the terms of the Ordinance.  Sonya Dias is a former resident of Denver who owns a dog named Gryffindor.  When she learned that Denver was resuming enforcement of the Ordinance in 2005, Dias prepared to move out of the City.  Ultimately, to avoid enforcement of the Ordinance, she sold her Denver loft and, at considerable expense, moved into a rented apartment in Littleton, Colorado.  She then joined with other dog owners and formed The Pit Bull BAND (an acronym for Breed Awareness, Not Discrimination).  She has played an active role in the organization and has assisted other dog owners whose

animals have been seized by animal control officials. Dias does not allege that she plans to return to Denver with Gryffindor.

Hilary Engel is also a former Denver resident and is the owner of a dog named Cysco. On May 5, 2005, while Engel still resided in Denver, her then-boyfriend was stopped by a Denver animal control officer while taking Cysco on a walk. The officer told Engel's boyfriend that he intended to seize Cysco once the Ordinance was reinstated. Engel took Cysco to the animal control office in an effort to determine whether Cysco was a pit bull as defined in the Ordinance. Following that evaluation, an animal control officer informed Engel that although Cysco was beautiful and friendly, the dog looked too much like a pit bull to remain in Denver. The officer allowed Engel forty-eight hours to remove Cysco from within City limits. Engel temporarily placed Cysco in a shelter outside Denver and eventually moved to Lakewood, Colorado, to seek refuge from the Ordinance. Engel spent more than $5,000 and forfeited the security deposit on her Denver apartment in the process. Like Dias, Engel does not allege that she and Cysco plan to move back to Denver.

Sheryl White, the third named plaintiff, is also a former resident of Denver who fears that her dog, Sherman, falls within the ambit of the pit bull ban. On December 15, 2005, Sherman was seized by an animal control officer responding to a report by a neighbor that White owned a pit bull. In addition to the seizure, a criminal summons was issued to White. Animal control officials impounded

Sherman until December 23, 2005. At that point, White was allowed to retrieve Sherman on the condition that White remove the dog from Denver. White complied, and from that date until January 1, 2006, she lived with Sherman at her employer's office in Littleton.

Pursuant to § 8-55(f) of the Ordinance, White demanded a hearing in order to force Denver to prove by a preponderance of the evidence that Sherman was a pit bull as defined in the Ordinance. The hearing officer, relying on evaluations by the three dog identification "experts" from the animal control office, determined that Sherman was a prohibited dog. From what we can glean from the complaint, the evaluations had been completed prior to the hearing. White requested a copy of these evaluations but animal control refused to disclose the documents because they contained "internal information." Then, on the day designated for White's criminal trial, Denver dismissed all charges. White thereafter returned with Sherman to Denver until October 2007 when she relocated to Belton, Texas. White does not allege an intention to return to Denver with Sherman.

On April 6, 2007, Dias, Engel, and White filed this 42 U.S.C. § 1983 lawsuit on behalf of themselves and others similarly situated.[3] They claimed the

_____

[3] On October 1, 2007, the plaintiffs moved to certify the case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2). The district court did not act on the motion to certify prior to ruling on Denver's motion to dismiss. Accordingly, in its order dismissing the case, the district court denied the motion

(continued...)

Ordinance was vague on its face and that it deprived them of procedural due process, substantive due process, and equal protection of the laws. As defendants, the complaint named the City and County of Denver, and several officials: the Mayor, the Manager of the Department of Environmental Health, the Director of the Division of Animal Care and Control, and the Supervisor of Animal Control Investigators (collectively "Denver") in both their official and individual capacities. The complaint sought injunctive and declaratory relief, damages, and attorneys' fees. Denver moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[4]

On March 20, 2008, without permitting oral argument on the motion, the district court dismissed all claims. Dias v. City & County of Denver, No. 07-cv-00722-WDM-MJW, 2008 WL 791939 (D. Colo. Mar. 20, 2008). The district court ruled that the Ordinance was not facially vague because it provided sufficiently clear standards such that persons of ordinary intelligence would be able to conform their conduct to the ban. Moreover, because enforcement of the

_____

[3](...continued)
to certify as moot. In light of our disposition, the district court will have to reconsider the motion for class certification on remand. We express no opinion on the merits of that motion.

[4] Denver also sought dismissal on the ground that the Colorado Supreme Court's decision in Colorado Dog Fanciers precluded the constitutional claims in this lawsuit. The district court declined to dismiss the case based on issue preclusion, however, because it concluded that the named plaintiffs were not in privity with the plaintiffs in Colorado Dog Fanciers. Denver has not appealed that ruling.

- 10 -

Ordinance is constrained by those same standards, the court concluded that it contained the required minimal guidelines to govern law enforcement. As for the substantive due process claim, the court rejected the plaintiffs' argument that the Ordinance burdened a fundamental liberty interest. In addition, the court held that, as a matter of law, the Ordinance was rationally related to a legitimate government interest. Accordingly, it dismissed the case and entered judgment in favor of Denver.[5] This appeal followed.

## II

Although the district court did not address the plaintiffs' standing to seek prospective relief,[6] standing is a component of this court's jurisdiction, and we are obliged to consider it sua sponte to ensure the existence of an Article III case or controversy. PeTA v. Rasmussen, 298 F.3d 1198, 1202 (10th Cir. 2002); Essence, Inc. v. City of Federal Heights, 285 F.3d 1272, 1280 (10th Cir. 2002); see Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). To demonstrate Article III standing, the plaintiffs must make three showings: first, that they have suffered an injury in fact which is concrete and particularized, and actual or imminent; second, that there is a causal connection between the injury

[5] Plaintiffs have not appealed the dismissal of the procedural due process or equal protection claims, therefore we do not address them.

[6] The district court did address the plaintiffs' standing to bring their claim that Denver violated their procedural due process rights by relying upon unwritten policies. As the plaintiffs have not appealed the dismissal of that claim, we need not address their standing to raise it.

and the challenged conduct; and third, that the injury is likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). As the parties invoking the jurisdiction of the federal courts, the plaintiffs have the burden of establishing standing. Id. at 561; Rasmussen, 298 F.3d at 1202.

To the extent the plaintiffs seek prospective relief, we conclude that they lack standing because they have not alleged a credible threat of future prosecution under the Ordinance. See Ward v. Utah ("Ward I"), 321 F.3d 1263, 1267-69 (10th Cir. 2003). Specifically, there is no credible threat of future enforcement because none of the plaintiffs currently resides in Denver and none has alleged an intent to return. To establish standing to seek prospective relief, a plaintiff must show a continuing injury; standing for retrospective relief can be based on past injuries. Rasmussen, 298 F.3d at 1202. As the Supreme Court explained, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974); see City of Los Angeles v. Lyons, 461 U.S. 95, 101-05 (1983). Only by alleging a continuing injury can a plaintiff seeking prospective relief establish an injury in fact.

In the context of a facial challenge to the constitutionality of a penal statute, a plaintiff alleges a continuing injury if "there exists a credible threat of

[future] prosecution thereunder."[7] Ward I, 321 F.3d at 1267. In Rasmussen, we concluded that PeTA lacked standing to seek prospective relief from an allegedly unconstitutional statute because it did not have a "good chance of being . . . injured in the future." 298 F.3d at 1203. After engaging in a demonstration for animal rights near a junior high school, several PeTA members had been arrested pursuant to a Utah statute prohibiting disruptive activities on or near school grounds. Id. at 1201 (citing Utah Code Ann. § 76-8-710). Another statute defined a "school" as "any private institution of higher education or any state institution of higher education." Id. (quoting § 76-8-701). Because PeTA had not alleged an intent to stage a future protest at an institution of higher education (as opposed to a junior high school), PeTA was not under a threat of future enforcement and lacked standing to seek prospective relief. Id. at 1203; see also Faustin v. City & County of Denver, 268 F.3d 942, 948 (10th Cir. 2001) ("To have standing, Faustin must show a real and immediate threat that she will be prosecuted under this statute in the future.").

As in Rasmussen, the plaintiffs have not demonstrated a continuing injury because they have not alleged a credible threat of future prosecution under the Ordinance. 298 F.3d at 1202-03; see Faustin, 268 F.3d at 948 (plaintiff lacked

_____

[7] In cases where the challenged statute threatens First Amendment freedoms, a plaintiff can demonstrate an injury in fact justifying prospective relief by alleging that the statute has a chilling effect on his or her speech. See Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1087-89 (10th Cir. 2006) (en banc). Plaintiffs make no such allegation in this case.

standing to seek prospective relief "[i]n light of the city prosecutor's determination that [she] was not violating the [challenged] posting ordinance"); cf. Ward I, 321 F.3d at 1268 (plaintiff had standing to seek prospective relief where he "ha[d] been given no assurances that he [would] not be charged under the hate-crimes statute if he engage[d] in future animal-rights protests similar to the one that was the basis for his felony charge in 2000"). The scope of the Ordinance, of course, is confined to Denver's city limits. Yet, as noted, none of the plaintiffs currently resides in Denver, and none of the plaintiffs has alleged an intention to return to Denver. Absent an allegation that any of the plaintiffs intend to return to the City with their dogs, there cannot be a credible threat of future prosecution under the Ordinance.[8] Cf. Am. Canine Found. v. Sun, No. C-06-4713 MMC, 2007 WL 878573, at *8 (N.D. Cal. March 21, 2007) (unpublished) (finding that an association had no standing to challenge a San Francisco pit bull ordinance for vagueness when its complaint alleged only that it had "active members that are residents in the State of California" but did not allege that it had

---

[8] The plaintiffs need not actually return to Denver with their dogs in order to have standing to seek prospective relief. Bronson v. Swensen, 500 F.3d 1099, 1107 (10th Cir. 2007) ("[A] plaintiff need not risk actual prosecution before challenging an allegedly unconstitutional criminal statute."); see Ward I, 321 F.3d at 1267 (noting that "[p]laintiffs may have standing even if they have never been prosecuted or actively threatened with prosecution").

- 14 -

active members who lived in San Francisco and were subject to the ordinance).

Accordingly, the plaintiffs lack standing to seek prospective relief.[9]

To the extent plaintiffs seek retrospective relief from injuries already caused, however, they have standing. Dias and Engel both suffered actual injuries because they were forced to move from Denver to avoid the reach of the Ordinance. White suffered actual injury when her dog, Sherman, was seized by animal control officers, and when she was charged with a criminal violation of the Ordinance. Thus, each plaintiff has alleged an injury in fact supporting retrospective relief. See Rasmussen, 298 F.3d at 1203; see also Ward I, 321 F.3d at 1267 n.5; F.E.R. v. Valdez, 58 F.3d 1530, 1533 (10th Cir. 1995). Moreover, these injuries were caused by the Ordinance—Dias and Engel would not have left Denver but for the Ordinance nor would Sherman have been seized and White criminally charged. See Rasmussen, 298 F.3d at 1203. Finally, retrospective relief would redress these injuries. See id.; Faustin, 268 F.3d at 948. Accordingly, we proceed to examine the merits of the plaintiffs' claims for retrospective relief.

---

[9] We have frequently relied upon "affirmative assurances of non-prosecution from a governmental actor" as a basis for concluding that a plaintiff lacked standing to seek prospective relief. Bronson, 500 F.3d at 1108 (collecting cases). Admittedly, there are no such assurances in this case. We certainly do not foreclose the possibility that the plaintiffs might succeed in demonstrating a credible threat that the City would enforce the Ordinance against them. Yet, as we have explained, none of the plaintiffs alleges an intent to return to Denver in the current pleadings.

## III

We review de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6).  Teigen v. Renfrow, 511 F.3d 1072, 1078 (10th Cir. 2007). We assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs.  Id. A complaint will survive dismissal only if it alleges a plausible claim for relief—that is, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Even so, "[g]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted).  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Applying these standards, we conclude that the district court correctly dismissed the plaintiffs' vagueness claim but prematurely dismissed the substantive due process claim to the extent it seeks retrospective relief.

**IV**

Plaintiffs claim that the Ordinance violates the Due Process Clause of the Fourteenth Amendment because it is unconstitutionally vague on its face.[10] Specifically, the plaintiffs contend that two parts of the Ordinance are impermissibly vague: (1) the criminal prohibition against owning "any dog that is an American Pit Bull Terrier, American Staffordshire Terrier, [or] Staffordshire

---

[10] At oral argument, counsel for the plaintiffs insisted that the vagueness challenge was as-applied. We cannot agree. Although the language of the complaint is not entirely clear, it is most easily understood as a facial challenge. Moreover, in their response to the motion to dismiss, the plaintiffs acknowledged that their claim was one of facial vagueness. Pl.'s Resp. to Mot. to Dismiss, at 12 ("Plaintiffs' Complaint alleges <u>facial vagueness</u> of provisions in the ordinance criminalizing ownership of dogs 'displaying the majority of physical characteristics' of the prohibited breeds." (emphasis added)). Although plaintiffs failed to include this response in the appendix submitted to this court, the response was before the district court and thus remains a part of the record on appeal, <u>see</u> Fed. R. App. P. 10(a)(1), and we exercise our discretion in favor of considering it, <u>Milligan-Hitt v. Bd. of Trs.</u>, 523 F.3d 1219, 1231 (10th Cir. 2008). The district court plainly understood the complaint to assert a facial challenge, as the legal standard it employed is appropriate only for claims of facial vagueness. See <u>Dias</u>, 2008 WL 791939, at * 7 ("To be sustained, a complaint must allege that 'an enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" (quoting <u>Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 495 n.7 (1982))). <u>Hoffman Estates</u>, of course, was a facial challenge. 455 U.S. at 491 ("This case presents a pre-enforcement <u>facial challenge</u> to a drug paraphernalia ordinance on the ground that it is unconstitutionally vague and overbroad." (emphasis added)). Moreover, in their opening brief to this court, the plaintiffs admitted that "[t]he District Court correctly stated the applicable legal standard that governs plaintiffs' allegation that the Denver ordinance is void because it is unconstitutionally vague." Aplt. Br. at 11. It was not until their reply brief and oral argument that the plaintiffs claimed their challenge was as-applied at least as to one plaintiff. Aplt. Reply Br. at 9.

- 17 -

Bull Terrier . . . or any dog exhibiting those distinguishing characteristics which substantially conform to the standards established by the American Kennel Club or United Kennel Club for any of the above breeds"; and (2) the prohibition against owning "any dog displaying the majority of physical traits of any one . . . or more of the above breeds." Denver, Colo., Rev. Mun. Code § 8-55(b)(2). Because neither portion of the Ordinance is impermissibly vague in all of its applications, we conclude that the district court properly dismissed the plaintiffs' vagueness challenge. See Hoffman Estates, 455 U.S. at 497.

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). This doctrine serves not only to put the public on notice of what conduct is prohibited, but also to guard against arbitrary enforcement. Id. at 358 (explaining that the more important aspect of the vagueness doctrine is "the requirement that a legislature establish minimal guidelines to govern law enforcement"). Although "[t]he same facets of a statute usually raise concerns of both fair notice and adequate enforcement standards . . . [t]he Supreme Court . . . continues to treat each as an element to be analyzed separately." United States v. LaHue, 261 F.3d 993, 1005 (10th Cir. 2001) (quotation omitted).

"Facial challenges are strong medicine." Ward v. Utah ("Ward II"), 398 F.3d 1239, 1246 (10th Cir. 2005). As the Supreme Court has explained, "[a]lthough passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks." Sabri v. United States, 541 U.S. 600, 608-09 (2004). For this reason, we have held that facial challenges are appropriate in two circumstances: (1) when a statute threatens to chill constitutionally protected conduct (particularly conduct protected by the First Amendment); or (2) when a plaintiff seeks pre-enforcement review of a statute because it is incapable of valid application. United States v. Gaudreau, 860 F.2d 357, 360-61 (10th Cir. 1988); see Hoffman Estates, 455 U.S. at 494-95 & n.5. In the latter case, plaintiffs face a heavy burden: They must "demonstrate that the law is impermissibly vague in all of its applications." Hoffman Estates, 455 U.S. at 497; see Ward II, 398 F.3d at 1251 ("Because Mr. Ward's vagueness challenge comes in the procedural posture of a declaratory judgment with no pending criminal charges, we may find [the challenged statute] unconstitutionally vague only if it is impermissibly vague in all of its applications."). Here, the plaintiffs' vagueness claim falls into this second category of facial challenges.

Insofar as the plaintiffs claim the AKC and UKC standards contain some elements that are vague and subjective, that may be true. But as we further explain below, a statute with some arguably vague elements is not automatically

vague on its face in violation of the Fourteenth Amendment.  Plaintiffs direct us to the AKC and UKC breed standards as incorporated by reference in the Ordinance.  See, e.g., Official UKC Breed Standard, American Pit Bull Terrier, Appellant Br. Ex. 4 ("[t]he American Pit Bull Terrier is a medium-sized, solidly built, short-coated dog with smooth, well-defined musculature"; "[t]he skull is large, flat or slightly rounded, deep, and broad between the ears"; "[t]he neck is of moderate length and muscular"); AKC American Staffordshire Terrier Breed Standard, Appellant Br. Ex. 1 (the head is "[m]edium length, deep through, broad skull, very pronounced cheek muscles, distinct stop"; the shoulders are "[s]trong and muscular with blades wide and sloping"; the back is "[f]airly short").  Plaintiffs point out that some of the standards are framed in terms of preferences, see, e.g., Official UKC Breed Standard, Staffordshire Bull Terrier, Appellant Br. Ex. 3 ("Dark eyes are preferred, but may bear some relation to coat color"; "[a]cceptable [coat] colors include red, fawn, white, black, any shade of brindle, and blue, with or without white.  Serious Faults: Black and tan or liver"), and claim that at least with respect to dog owners who are not breeders, determining whether a dog is prohibited would be a difficult task.

Even so, plaintiffs' counsel conceded at oral argument that these standards can clearly fit a pure breed American Pit Bull Terrier, American Staffordshire Terrier, or Staffordshire Bull Terrier, registered as such with the AKC or UKC.  Such a registered pure breed would unquestionably qualify as a prohibited dog

under the Ordinance.  See Sun, 2007 WL 878573, at *9 ("[I]t is difficult to imagine, at least with respect to purebred specimens, how the breed could be identified more precisely in the Ordinance.").  Moreover, and for the same reason, the Ordinance is sufficiently definite such that it does not encourage arbitrary enforcement with respect to registered pure breeds.  The Ordinance, therefore, is admittedly not "vague in all of its applications," and the plaintiffs' facial vagueness challenge was properly dismissed for failure to state a claim.  See Hoffman Estates, 455 U.S. at 500-03; cf. Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 973 (9th Cir. 2003) (affirming 12(b)(6) dismissal of facial vagueness challenge because plaintiffs had not alleged that the challenged ordinance was vague in all its applications).

## V

Plaintiffs' final contention is that the Ordinance deprives them of substantive due process.  First, they allege that the human/companion animal bond is a fundamental liberty interest, and because the Ordinance is not narrowly tailored to serve a compelling government interest, it imposes an unconstitutional burden on this fundamental right.  Second, even if a fundamental liberty interest is not implicated, the plaintiffs contend the Ordinance irrationally treats pit bulls and their owners in a different fashion than other dogs and owners because there is a lack of evidence that the prohibited animals pose a threat to public safety or constitute a public nuisance.

"[T]he touchstone of due process is protection of the individual against arbitrary action of government." City of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). In addition to guaranteeing fair procedures, the Due Process Clause of the Fourteenth Amendment "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." Lewis, 523 U.S. at 840 (quotation omitted). This substantive component guards against arbitrary legislation by requiring a relationship between a statute and the government interest it seeks to advance. If a legislative enactment burdens a fundamental right, the infringement must be narrowly tailored to serve a compelling government interest. Washington v. Glucksberg, 521 U.S. 702, 721 (1997). But if an enactment burdens some lesser right, the infringement is merely required to bear a rational relation to a legitimate government interest. Id. at 728; Reno v. Flores, 507 U.S. 292, 305 (1993) ("The impairment of a lesser interest . . . demands no more than a 'reasonable fit' between governmental purpose . . . and the means chosen to advance that purpose."); Seegmiller v. LaVerkin City, 528 F.3d 762, 771-72 (10th Cir. 2008) ("Absent a fundamental right, the state may regulate an interest pursuant to a validly enacted state law or regulation rationally related to a legitimate state interest." (citing Reno, 507 U.S. at 305)). Although we agree with the district court that strict scrutiny does not apply, we conclude under a rational basis analysis that the plaintiffs have alleged a substantive due

- 22 -

process violation sufficient to survive a motion to dismiss for failure to state a claim.

## A

At the outset, plaintiffs claim that the human/companion animal bond is a fundamental liberty interest triggering strict scrutiny. In order to show that the human/companion animal bond is a fundamental right, we undertake a two-part inquiry. First, we "carefully describe the asserted fundamental liberty interest." Seegmiller, 528 F.3d at 769 (quoting Glucksberg, 521 U.S. at 721) (alterations omitted). Second, we ask whether that interest is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Glucksberg, 521 U.S. at 720-21 (quotations omitted); Seegmiller, 528 F.3d at 769 (quotations omitted).

The district court properly refrained from applying strict scrutiny to the Ordinance. Plaintiffs' complaint is devoid of any factual allegations which would lend support to a conclusion that the human/companion animal bond is a fundamental liberty interest. Quite to the contrary, the nature and history of the relationship between the plaintiffs and their dogs is not raised in the complaint. Because of such failure, we do not further pursue a strict scrutiny analysis.

**B**

**1**

Even if the Ordinance does not implicate a fundamental right, it must nonetheless bear a rational relationship to a legitimate government interest. Glucksberg, 521 U.S. at 728; Seegmiller, 528 F.3d at 771. Yet, before the district court and at oral argument before us, Denver argued that if a fundamental right is not implicated, the correct standard by which we determine the constitutionality of an ordinance is whether it "shocks the conscience" of federal judges. See Lewis, 523 U.S. at 846; Seegmiller, 528 F.3d at 767-69; Graves v. Thomas, 450 F.3d 1215, 1220-21 (10th Cir. 2006).

However, the "shocks the conscience" standard is not applicable to cases in which plaintiffs advance a substantive due process challenge to a legislative enactment. Instead, it is an inquiry reserved for cases challenging executive action. Lewis, 523 U.S. at 846-47 & n.8. Compare Glucksberg, 521 U.S. at 728, and Murphy v. Matheson, 742 F.2d 564, 575 (10th Cir. 1984), with Seegmiller, 528 F.3d at 767-68, and Graves, 450 F.3d at 1220-21, and Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006). Legislative action is tested under a two-part substantive due process framework as we have described. Again, we ask whether a fundamental right is implicated. If it is, we apply strict scrutiny to test the fit between the enactment's means and ends. Otherwise, we use a rational basis test.

We held in <u>Seegmiller</u> that application of a "shocks the conscience" standard in cases involving <u>executive</u> action is not to the exclusion of the foregoing two-part framework for analyzing substantive due process challenges to legislation. 528 F.3d at 769 ("In sum, as we see it, the 'shocks the conscience' and 'fundamental liberty' tests are but two separate approaches to analyzing governmental action under the Fourteenth Amendment. They are not mutually exclusive . . . . Courts should not unilaterally choose to consider only one or the other of the two strands. Both approaches may well be applied in any given case."). Denver apparently deduces from this holding that the reverse is also true: That a "shocks the conscience" inquiry from executive action cases also applies in a legislative context. We do not agree. Although <u>Seegmiller</u> does not explicitly limit its holding to the executive context, it relies almost exclusively on <u>Chavez v. Martinez</u>, 538 U.S. 760 (2003), a recent case involving executive action in which the Supreme Court said nothing about legislative action. We clarify today that when <u>legislative</u> action is at issue, <u>Glucksberg</u> continues to govern, and only the traditional two-part substantive due process framework is applicable.[11] 521

---

[11] Moreover, to the extent Denver contends that the shocks the conscience test has supplanted the rational basis test entirely, that contention is flatly inconsistent with <u>Seegmiller</u>. 528 F.3d at 769, 771-72. In that case, we first held that the challenged governmental action did not shock the conscience, <u>id.</u> at 769 n.2, and then proceeded to inquire whether the same conduct was rationally related to a legitimate government interest, <u>id.</u> at 771-72. That latter inquiry would have been entirely unnecessary if conduct that did not shock the conscience could not otherwise constitute a substantive due process violation.

U.S. at 728; see Lewis, 523 U.S. at 846 ("[C]riteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue.").  This distinction stands to good reason because the rationale for a shocks the conscience test is out of place in a legislative context.  See Lewis, 523 U.S. at 847 n.8 ("[E]xecutive action challenges raise a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to what we have called a font of tort law.").  Evaluating legislation under the traditional substantive due process framework does not risk turning the Constitution into a "font of tort law." See id.  Accordingly, because the "shocks the conscience" standard is inapplicable when a legislative enactment is challenged, we proceed to review the Ordinance under a rational basis analysis.

**2**

After careful review of the complaint, we conclude that the plaintiffs have alleged a substantive due process violation sufficient to survive a motion to dismiss for failure to state a claim.  Viewing the factual allegations in the light most favorable to the plaintiffs, as we must, the complaint plausibly alleges that the Ordinance is not rationally related to a legitimate government interest. Although the plaintiffs may be unable to demonstrate through evidence that the Ordinance is irrational, the complaint makes out a claim for relief.

It is uncontested that Denver has a legitimate interest in animal control—the protection of health and safety of the public. See Nicchia v. New York, 254 U.S. 228, 230-31 (1920); Sentell v. New Orleans & Carrollton R.R. Co., 166 U.S. 698, 704-05 (1897); Clark v. City of Draper, 168 F.3d 1185, 1188 (10th Cir. 1999); Am. Canine Found. v. City of Aurora, No. 06-cv-01510-WYD-BNB, 2008 WL 2229943, at *7 (D. Colo. May 28, 2008); Vanater v. Village of South Point, 717 F. Supp. 1236, 1242-43 (S.D. Ohio 1989); Starkey v. Township of Chester, 628 F. Supp. 196, 197 (E.D. Pa. 1986); Colo. Dog Fanciers, 820 P.2d at 653; City of Toledo v. Tellings, 871 N.E.2d 1152, 1157 (Ohio 2007). Even so, the plaintiffs have alleged that the means by which Denver has chosen to pursue that interest are irrational. In particular, the plaintiffs contend that there is a lack of evidence that pit bulls as a breed pose a threat to public safety or constitute a public nuisance, and thus, that it is irrational for Denver to enact a breed-specific prohibition.

Pointing to the cases where courts across the country have rejected substantive due process challenges to pit bull bans, see, e.g., Vanater, 717 F. Supp. at 1242-43; Colo. Dog Fanciers, 820 P.2d at 650; Garcia v. Village of Tijeras, 767 P.2d 355, 358-61 (N.M. Ct. App. 1988); Singer v. City of Cincinnati, 566 N.E.2d 190, 191-92 (Ohio Ct. App. 1990), Denver argues that the Ordinance is rational as a matter of law. This argument misconceives the nature of the plaintiffs' challenge. Specifically, the plaintiffs contend that although pit bull

bans sustained twenty years ago may have been justified by the then-existing body of knowledge, the state of science in 2009 is such that the bans are no longer rational.[12]  This claim finds some support in the AKC and UKC standards themselves, to which the plaintiffs direct us.  The official UKC breed standard for the American Pit Bull Terrier, for instance, states that "[American Pit Bull Terriers] make excellent family companions and have always been noted for their love of children."  Official UKC Breed Standard, American Pit Bull Terrier, Appellant Br. Ex. 4.  American Pit Bull Terriers are an "extremely friendly" breed "even with strangers.  Aggressive behavior toward humans is uncharacteristic of the breed . . . ."  Id.  Similarly, the AKC breed standard for Staffordshire Bull Terriers states that, "with its affection for its friends, and children in particular, its off-duty quietness and trustworthy stability, [the Staffordshire Bull Terrier is] a foremost all-purpose dog."  AKC Staffordshire Bull Terrier Breed Standard, Appellant Br. Ex. 2.  Without drawing factual inferences against the plaintiffs, the

---

[12] Moreover, in the majority of cases where courts have sustained a pit bull ban as reasonable, they have done so based on a developed evidentiary record. See, e.g., Vanater, 717 F. Supp. at 1238-41; Colo. Dog Fanciers, 820 P.2d at 652 n.6; Garcia, 767 P.2d at 357; Tellings, 871 N.E.2d at 1154; Singer, 566 N.E.2d at 191; cf. City of Aurora, 2008 WL 2229943, at *9 (denying city's motion for summary judgment when, "[u]nlike the above referenced cases, no evidence or facts ha[d] been presented as to why the Aurora City Council believed that the ordinance was necessary to protect the safety of its residents").  No such record was developed in this case because the district court dismissed pursuant to Rule 12(b)(6).

district court could not conclude at this early stage in the case that the Ordinance was rational as a matter of law.

We have no occasion to pass upon the ultimate merit of plaintiffs' substantive due process challenge; that is not our role at this juncture. We are constrained to deciding if the complaint alleges facts sufficient to state a claim for relief. Whether the plaintiffs can marshal enough evidence to prevail on the merits of their claim that the Ordinance is irrational is a different matter entirely. But at the 12(b)(6) stage, we must assume that they can, even if it strikes us "that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (quotation omitted). Crediting the allegations in the complaint, and drawing all inferences therefrom in the light most favorable to the plaintiffs, we conclude that they have stated a plausible substantive due process violation.

## VI

In sum, because the plaintiffs have not alleged a credible threat of future prosecution under the Ordinance, they lack standing to seek prospective relief. To the extent plaintiffs seek such relief, we **DISMISS** those claims. We **AFFIRM** the district court's dismissal of the vagueness claim. To the extent plaintiffs seek retrospective relief, we **REVERSE** the dismissal of the substantive due process claim and **REMAND** for further proceedings consistent with this opinion.